## COVELL *v.* BOSTWICK.

*(Circuit Court, S. D. New York. July 15, 1889.)*

**1. PATENTS FOR INVENTIONS—LICENSES—RIGHT TO ROYALTIES.**

Plaintiff, the inventor of certain improvements in metal cans under patents dated in 1864 and 1866, and also a machine for manufacturing them, patented in 1867, granted to defendant the exclusive right to manufacture and sell cans embodying the inventions, which plaintiff agreed to defend, and also the right to use at defendant's risk the machine, and all improvements in such cans, machines, and appliances which plaintiff should invent, the defendant to pay a royalty for each can. Plaintiff, in 1869, obtained another patent for a machine, and in 1871 for further improvements in the cans. Defendant manufactured cans, using the machine of 1869, and the invention of 1871, and embodying, as the parties supposed, the invention of 1864. Reports were made and royalties paid until 1877, when P., the owner of a patent similar to the invention of 1866, sued defendant for infringement. Plaintiff took the defense of the suit, and also brought suit against P. for cancellation of his patent, on the ground that it interfered with plaintiff's patent of 1864. The suits resulted in a decree against defendant for infringement of P.'s patent, and the dismissal of plaintiff's suit because the invention covered by plaintiff's patent of 1864 was for a different invention from that of P.'s, which defendant used. Afterwards defendant discovered that the device used by him, embodied in plaintiff's patents, was anticipated by an earlier patent, and P.'s suit was compromised for $6,000, which defendant paid, and charged to plaintiff. *Held* that, as the defendant had had the use of all that the parties understood he was to have, he was liable for the royalties on the cans manufactured.

**2. SAME.**

The agreement also provided that, if plaintiff failed to maintain the validity of any of the inventions claimed, the defendant should pay an equitable proportion of the royalty for the parts remaining valid, to be fixed by arbi-

trators. *Held*, that this provision did not apply. Plaintiff failed in his suit against P., not because of the invalidity of his invention, but because the patent did not cover it. Besides, the failure to maintain the validity of the patents in suits brought upon them would not affect the right to royalties which had accrued before such failure, and defendant was protected in the suit by P. by plaintiff's paying the amount found due.

**3. Same.**
Defendant made cans not embodying the inventions of the patents of 1864 and 1866, but they did embody those of the patent of 1871 The agreement only provided for the use of this invention on cans which should be subject to the payment of a royalty. Defendant reported the number made, but re-ported them as different from the others, and not subject to royalty. *Held*, that in thus using the invention of 1871 defendant became a tort-feasor, and was not liable for royalties in an action on the contract.

At Law. Action to recover royalties for use of patented inventions.
*William H. Arnoux*, for plaintiff.
*Charles C. Beaman, Jr.*, and *Edward N. Dickerson*, for defendant.

WHEELER, J. This cause has been tried by the court upon written waiver of a jury. Improvements in sheet-metal cans, including an interior interlocking corner joint, were patented to Emile Peltier, August 31, 1860, in France, and August 27, 1861, in England. Letters patent of the United States, No. 43,371, for such improvements, including a corner joint like that patented to Peltier, were granted to George W. Prince, assignor, June 28, 1864. The plaintiff was an inventor of improvements in such cans, and in their manufacture, and had three patents of the United States relating to them. One, No. 42,351, granted to him April 19, 1864, was for uniting the sides of such cans by an interior interlocking corner joint, and securing the heads in place by internal grooves; another, No. 52,972, granted to him March 6, 1866, showed a corner joint like that of Peltier, and covered cans having a similar joint uniting the bottom to the sides so as to be flush with their ends; and another, No. 63,220, was for a soldering-machine for soldering such cans, granted to him March 26, 1867 He had also invented a machine for clamping the edges of such cans, for which he had applied for a patent. On March 2, 1869, he entered into an agreement in writing with the defendant, which was modified by another of December 30, 1870, by the terms of which he granted to the defendant the exclusive right to manufacture and sell sheet-metal cans embodying the inventions of these patents, which would be those of April 19, 1864, and March 6, 1866, and which the plaintiff was to maintain and defend, and to use in their manufacture, and not otherwise, at the defendant's own risk, without payment of further royalty, the soldering-machine, the machine for clamping the edges of cans, and all improvements in such cans and machines and appliances for the manufacture of cans which the plaintiff should invent or acquire by purchase, for a royalty of one cent per can, on which was to be stamped conspicuously, "Covell's Patents: April 19, 1864; Mar. 6, 1866." On September 21, 1869, the plaintiff obtained a patent for the machine for clamping the edges of cans; and on December 5,

1871, patent No. 121,490 was granted to him for an improvement in the corners of the heads of rectangular cans.

The defendant commenced the manufacture under the license of square-cornered cans, which had an interior interlocking corner joint, embodying the invention of the patents of Peltier and of Prince, and was like the joint shown in the plaintiff's patent of March 6, 1866; and those made after his patent of December 5, 1871, embodied the invention of that patent. In the manufacture of all of them the invention of the plaintiff's patent of September 21, 1869, was employed. None of them had flush heads, and none of them embodied the patented invention of the plaintiff's patent of March 6, 1866. The parties mutually understood that the interlocking corner joint used in their manufacture was covered and protected by the plaintiff's patent of April 19, 1864. The defendant so made before April 1, 1877, 11,071,290 of these cans, which he reported to the plaintiff, and paid the royalty on, from time to time, according to the terms of the agreement of license. The royalties so paid amount to $110,712.90. At about that time the defendant commenced the manufacture of round-cornered cans, which were made by the same machinery as the square-cornered cans, and were in all material respects like them, except that the joint uniting the sides was in the curve of the round corner instead of at the angle of a square corner, and became the old and well-known joint of common stove-pipe and of tin-pails, instead of being the corner joint of any of these patents. At about the same time George W. Banker, who had become the owner of the patent to Prince, commenced suit upon it against the defendant for infringement of it by making these square-cornered cans. In the agreement of license was a clause providing that payment of royalties should be suspended during the pendency of such suit, unless the plaintiff should furnish security for refunding them in case the suit should be determined adversely to him. The plaintiff assumed the defense of that suit, and brought a cross-suit against Banker to repeal the Prince patent for alleged interference with his patent of April 19, 1864, and with his rights under it in bringing the suit against the defendant, but did not furnish security for repayment of royalties. The defendant suspended payment of royalties, but continued to make and report the square-cornered cans to the number of 1,615,983, on which he has paid no royalty. He continued to make the round-cornered cans, and reported them to the plaintiff, with a claim that they were not such as a royalty was to be paid upon, but in order that the plaintiff might know how many were made, and that any claim for the use of his patented inventions about them might be readily adjusted. The two causes proceeded to hearing under a stipulation that the same proofs should be used in both, and that they should be heard and determined together. The Peltier patent was not brought into that litigation, and does not appear to have been known to those concerned. It resulted in a decree for an injunction and an account against the defendant for the infringement of Banker's patent, and a decree dismissing the plaintiff's bill against Banker on the ground that the invention of the plaintiff's patent of April 19, 1864, was of a differ-

ent joint from that of the Prince patent, which the defendant had used. Banker v. Bostwick, 3 Fed. Rep. 517. After these suits were so decided the defendant employed counsel for himself, who discovered the Peltier patent, and called the attention of counsel for the plaintiff and of Banker to it, and all agreed that it was a full anticipation of the corner joints of the other patents. Thereupon the defendant, pursuant to an understanding with the plaintiff, settled with Banker, and procured him to discontinue his suit for $6,000, which the defendant paid and charged to the plaintiff with his approval, and which was about what those concerned thought would be the expense of getting the Peltier patent into the litigation. The defendant made 11,581,719 of these round-cornered cans before this termination of the litigation, and reported them to the plaintiff, under the claim stated that they were not subject to the royalty of one cent per can. This suit is brought to recover the royalty of one cent per can on the square-cornered cans not paid for, amounting to $16,159.83, and on the round-cornered cans, amounting to $115,817.19. The defendant denies liability for these royalties, and sets up a counter-claim for the royalties paid.

The plaintiff's patent of April 19, 1864, was a prominent subject of the litigation with Banker. Both parties here were parties or privies to both of those suits, and the decrees in each, to the extent that they were final, are binding and conclusive upon both. 1 Greenl. Ev. §§ 523, 551. The decree in Banker v. Bostwick, although made in some senses on final hearing, was interlocutory merely, and did not become absolutely final before the suit was discontinued. The decree in Covell v. Banker was made upon the same considerations, and was final and conclusive. It established that the corner joint used by the defendant in the manufacture of the square-cornered cans was not covered by the plaintiff's patent of April 19, 1864, but was covered by the Prince patent. These cans, therefore, did not actually embody the exact invention of either of the plaintiff's patents for the use of which by the terms of the license the royalty was to be paid. The defendant, however, had and enjoyed the use of these patents of the plaintiff for exactly what they mutually understood he was to have them for. He occupied a field, as of exclusive right, which they supposed the patents covered, under them, although they did not cover that precise field. His situation in this respect was like that of a lessee who should occupy and enjoy premises supposed to be the leased premises, but which should not be precisely such. That a patent or lease should fail to cover the invention or premises bargained for by want of description would seem to be no better defense to an action for royalty or rent than if it failed to do so by want of right or title. That mere failure of the right or title does not excuse payment of royalties or rent does not appear to be doubtful, and is not disputed in behalf of the defendant. Stott v. Rutherford, 92 U. S. 107; White v. Lee, 14 Fed. Rep. 790; McKay v. Jackman, 17 Fed. Rep. 641. If the licensee has what he bargained for, without disturbance, he is bound to fulfill his part of the agreement. Marston v. Sweet, 82 N. Y. 528. The defendant has had what he bar-

gained for in respect to the square-cornered cans, except as to the payment of $6,000 to Banker; and as this was done by the defendant with the concurrence of the plaintiff, and the amount has been charged to him by the defendant with his approval, he takes the burden of the disturbance upon himself, and relieves the defendant of it. If a lessee should become subject to pay rent to another for the premises occupied, that might amount to an eviction, and relieve him from liability for rent to the lessor. *George* v. *Putney*, 4 Cush. 354; 1 Washb. Real Prop. c. 10, § 8. But if the lessor, through the lessee or otherwise, assumes that liability, and relieves the lessee from it, there is no eviction by that, and the liability for rent would not be thereby altered, especially if this is done with the concurrence of the lessee. The relations of a licensee are so similar that the same results would seem to follow like events in them. *Stott* v. *Rutherford*, 92 U. S. 107; *White* v. *Lee*, 14 Fed. Rep. 790.

The agreement of license contained a clause providing that the plaintiff would defend the defendant against any and all suits in consequence of the use of inventions covered by these two patents of April 19, 1864, and March 6, 1866. With the assumption of the $6,000 paid to Banker, the plaintiff has fulfilled this obligation, even with the patents considered as covering all that the parties understood them to cover. The agreement also contained a clause providing that, in case the defendant should be restrained by injunction from manufacturing cans embodying these inventions, the covenants therein on his part should be suspended until the dissolution of it. The defendant was not, however, restrained by injunction from making these or any of the square-cornered cans, for he made them; but he did not make them in violation of any injunction, for they were all made about three years before any injunction was ordered, and almost all of them before any suit was brought.

The agreement also contained a further clause, which provided that, in case the plaintiff should fail to establish the validity of his patents or claim for any of the inventions covered by them, the defendant should pay an equitable proportion of the royalty only for that part which should remain valid and in force, to be fixed by disinterested persons to be chosen by the parties. The suit of *Covell* v. *Banker* was brought upon the plaintiff's patent of April 19, 1864, and the bill of complaint in it was dismissed, not, however, because the patent was invalid, but because Banker's patent did not interfere with it. If the "claim for" inventions mentioned in this clause would cover what the plaintiff assumed, and both he and the defendant understood it did, in respect to the corner joint used by the defendant in the manufacture of the square-cornered cans, as perhaps it does, then the plaintiff failed in that suit to establish its validity to that extent. But the plaintiff's license was exclusive, and this clause appears to have been inserted to protect the defendant, in the exclusive rights which he sought to acquire, from infringers and others against whom suits might be necessary. It was in the nature of a covenant for quiet enjoyment, prospective in operation,

which would not be broken without eviction, or what by the terms of the contract would be tantamount to one.    4 Kent, Comm. 471; Rawle, Cov. (3d Ed.) 165.    Failure to maintain the validity of the patents in suits brought upon them would not affect the right to royalties which had accrued before such failure.    *White* v. *Lee, supra; McKay* v. *Jackman, supra.*    The right to royalties on all these square-cornered cans had fully accrued before there was any failure to establish the claim to the corner joint used in the manufacture of these cans in that suit brought on the patent of April 19, 1864; and that suit was not brought against any infringer, but to protect the defendant from a claim of infringement made against him; and as the plaintiff saves the defendant from the consequences of that claim by letting the $6,000, which relief from it cost, be charged to him, the protection sought by that suit is fully furnished to the defendant by the plaintiff.

In view of these considerations, the defendant appears to have had and enjoyed, in the making of these square-cornered cans, the exclusive use of all the inventions which he bargained with the plaintiff for, and to have been protected in that use not only as fully as the plaintiff agreed to protect him, but as fully as he could be protected.    Upon this he appears to be bound to pay the agreed royalty, of one cent per can, on them, in fulfillment of the agreement in respect to them on his part. *A fortiori* he is not entitled to recover back the royalties already paid on the same kind of cans, made previously to these.

The round-cornered cans did not embody any of the inventions of either of the patents of April 19, 1864, or of March 6, 1866, for the use of which the royalty was to be paid.    They had stamped on them when made: "Covell's Patents: Mar. 6, 1866; Dec. 5, 1871."    This would be some evidence that they were made under the patent of March 6, 1866, as well as under that of December 5, 1871; but this would not be conclusive of that fact, against other evidence clearly to the contrary. The number of them was reported to the plaintiff, but not as of cans on which the royalty of 1 cent per can was to be paid.    In *Pope* v. *Owsley,* 27 Fed. Rep. 100, cited for the plaintiff, the reports appear to have been absolute of machines as subject to the royalty.    These circumstances do not bind the defendant to the contrary of the fact that these cans were not within those patents.    Neither did the parties mutually understand that the patent of April 19, 1864, would cover the side seams of these cans, as was the case with the corner joint of the square-cornered cans.    They had no mutual understanding about that seam. When it first appeared in the cans, the defendant reported them as different from the others, and subject to doubt about the royalty.    The plaintiff is not shown to have ever dissented from this.    The doubt does not appear to have been removed, nor any understanding as to these cans to have been arrived at.    The defendant did not use the inventions of these patents for which royalties were to be paid about these cans at all, and did not have anything in that behalf for which he had bargained and agreed to pay the royalty of one cent per can.    He was to pay for such occupation and enjoyment of the field of invention of these pat-

ents as he should have, but in the making of these cans he has not had any. The estoppels in a lease relate only to the leased premises. *Knapp* v. *Marlboro*, 34 Vt. 235. In *White* v. *Lee, supra,* a decree for license fees appears to have been refused because the patent did not cover what was practiced; and in *Pope* v. *Owsley, supra,* BLODGETT, J., says the question left open for the defendant in such a case "is whether the machines made by them are within the terms of the claims in the patents." These cans are not within the claims of these patents. They did embody, however, the inventions of the patent of December 5, 1871, and that of the patent of September 21, 1869, was employed in their manufacture. By the terms of the agreement the defendant was granted the right to use the inventions of these patents only about the cans which should be subject to the payment of royalties. The counsel for the plaintiff insists that, as the defendant had no right to use them except about cans for which royalties should be paid, the use of them by him about cans would give the right to the royalties on them. But that would put the use of the inventions of these collateral and merely incidental patents on an equality with those of the two main and principal ones for only which royalties were agreed to be paid, and take it materially beyond the agreement of the parties. The contract not only makes no provision for such of these inventions, but expressly prohibits it. The clause relating to fixing an equitable proportion of royalty by arbitration does not extend to such use. That seems to apply only to the use of the remainder, when the defendant should be deprived by adverse decision of the exclusive use of part of the inventions for which royalties were to be paid. The defendant was not deprived of any part of such exclusive use in the manufacture of these cans. He voluntarily made these cans without embodying in them any of the inventions for which he was to pay royalty. In using these other inventions about these cans he took them beyond where he had any right to take them. He thereby became a tort-feasor, and liable as such only, and not upon the contract. Story, Bailm. § 413; *Homer* v. *Thwing*, 3 Pick. 492; *Towne* v. *Wiley*, 23 Vt. 355. The defendant showed by reporting these cans to the plaintiff, as he did, that he did not intend to appropriate any of these inventions to his own use in avoidance of liability therefor, and that he did intend to make just compensation therefor; but that did not bring the use within the terms of the contract already made, nor constitute any new contract which can be enforced here. The liability for that use of these inventions appears to be wholly without the scope of this action.

The result of these considerations is that the plaintiff is entitled to recover only the royalty on the 1,615,983 square-cornered cans not paid for, amounting to $16,159.83, after deducting the $6,000 charged by the defendant to the plaintiff, with interest. The contract does not provide for interest on the royalties. Banker's suit was pending till it was discontinued by the settlement on November 5, 1880. The payment of these royalties was properly suspended till that time. After that they were due, and would bear interest. The payment of the $6,000

was made then, and should be deducted as of that time. The balance is $10,159.83, on which the interest to the time of judgment is $5,245.83; in all, $15,405.66. Let judgment be entered for the plaintiff for $15,-405.66.