## ANDREWS v. LANDERS et al.

(Circuit Court, D. Connecticut. February 17, 1896.)

### No. 408.

1. PATENTS—LIMITATION OF CLAIM—FAUCETS.
    The Andrews patent, No. 193,840, for an improvement in faucets, construed, and *held* to consist of a combination comprising a nozzleless, L-shaped body, with an open, projecting screw plug, and oblong lateral orifice, as specifically claimed.

2. SAME—LICENSES.
    A manufacturer who had a license to make articles "containing the patented improvement," and who had made articles of a particular pattern, and paid the license fees thereon, for several years, *held* estopped to allege that such device did not contain the patented improvement. Contra, however, as to devices of a different pattern, which he had been making and selling for 20 years prior to taking the license, and which he never offered to account for, and never, by stamping or otherwise, represented to be made under the patent.

3. SAME—EVIDENCE—PRIOR STATE OF THE ART.
    In an action to recover royalties under a contract granting defendants the right to make devices "containing the patented improvement," evidence may be given of the prior state of the art, not to invalidate the patent, but to explain the meaning of these words, and as bearing on the situation of the parties, and their object in making the contract.

This was an action by Thomas A. Andrews against Landers, Frary & Clark, to recover royalties under the following contract:

"This agreement, made this 23d day of April, 1881, between Thomas A. Andrews, party of the first part, and Landers, Frary & Clark, party of the second part, witnesseth: That whereas, letters patent of the United States for an improvement in faucets were granted to the party of the first part, dated Augt. 5th, 1877; and whereas, the party of the second part is desirous of manufacturing faucets containing said patented improvement: Now, therefore, the parties have agreed as follows: (1st) The party of the first part hereby grants the party of the second part the exclusive right (Peck Bros. & Co. excepted) or license to manufacture at their factory in New Britain, Ct., to the end of the term for which said letters patent were granted, faucets containing the patented improvement, and to sell the same within the United States. (2) The party of the second part agrees to make full and true returns to the party of the first part, upon honor or under oath, upon the first days of January, April, July, & October in each year, of all faucets containing the patented improvement manufactured by them. (3) The party of the second part agrees to pay to the party of the first part twenty-five cents per dozen as a license fee upon every doz. faucets manufactured by said party of the second part, containing the patented improvement. (4) In consideration of the small royalty paid, and the exclusive right in the premises (Peck Bros. & Co. excepted) the party of the second part agrees to give the general introduction of said faucet special attention, and crowd the same on the market, to the end of the term of said contract. (5) Upon failure of the party of the second part to make returns or to make payments as herein provided or named, the party of the first part may terminate this license by serving a written notice upon the party of the second part, but the party of the second part shall not thereby be discharged from any liability to the party of the first part for any license fee due at the time of the service of said notice. (6) In case any parties (Peck Bros. & Co. excepted) shall make this faucet, or any infringement of the patent rights of said Andrews, the said party of the first part, said Andrews, agrees to take legal measures to protect said patent, on being notified in writing by the party of the second part; and, upon failure of the party of the first part for a period of six months from date of said notice to cause said infringers to cease the manufacture of said faucet, then the party of the second part shall be released from any royalty obligations until such time as the party of the first part shall cause said infringers to cease the manufacture of said infringing faucet. In witness whereof the parties above named have hereunto set their hands this day and year first above written.                                    T. A. Andrews.
                                                       "Landers, Frary & Clark.
                                                       "C. S. Landers."

The case was tried to the court under a stipulation waiving a jury. Certain requests and admissions were also incorporated in said stipulation, which is as follows:

"For the purpose of a trial of this cause, it is admitted, and the parties stipulate, that the following may be found true by the court in its finding, if it make one, and be made a part of the record herein: (1) That the averments of the complaint in regard to the citizenship, residence, and incorporation of the respective parties are true. (2) That the defendant has heretofore, and prior to the commencement of this action, and since the execution of the contract, Exhibit A, manufactured faucets, of which the Exhibit Andrews Faucet is a sample, and for which the defendant has accounted to the plaintiff regularly down to and including the 4th day of October, 1894, and for which the defendant has paid to the plaintiff the royalties agreed upon in Exhibit A of the complaint as it has accounted for the same. (3) That the defendant has also manufactured, since the execution of the said agreement, faucets, of which Exhibit Safety Faucet is a specimen, the exact number of which is to the plaintiff unknown, and has never paid royalties upon the same. But the defendant reserves the right to object, and will object, that said 'safety faucets' are not within the claim of said letters patent to said Andrews, and are not within the contract, Exhibit A, upon which this suit is brought; and this admission as to the manufacture of said 'safety faucets'

is made expressly subject to such reservation and objection; and the parties hereto unite in the request that the court, in its finding, if it makes one, will rule upon the question whether or not said 'safety faucets' are within the claims of said letters patent to said plaintiff, and said contract, Exhibit A, upon which this suit is brought. (4) That the defendant has also manufactured, since the execution of this agreement, faucets, of which Exhibit Compression Faucet is a specimen, the exact number of which is unknown to the plaintiff, and has never paid royalty upon the same. But the defendant reserves the right to object, and will object, that said 'compression faucets' are not within the claim of the letters patent to said Andrews, and are not within the contract, Exhibit A, upon which this suit is brought, and this admission as to the manufacture of said 'compression faucets' is made expressly subject to such reservation and objection; and the parties hereto unite in the request that the court, in its finding, if it makes one, will rule upon the question whether or not said 'compression faucets' are within the claims of said letters patent to the plaintiff, and said contract, Exhibit A. upon which this suit is brought. (5) It is further stipulated by the plaintiff, in the event the court shall rule that evidence is admissible to show that faucets like Exhibit Fenn Faucets, Nos. 1, 2, and 3, were manufactured and sold and used in the United States prior to the date of the said patent, No. 193.840, and that the Exhibit Russell & Erwin Catalogue, at page 339, was printed in 1861, and that faucets like said Exhibits Fenn Faucets, Nos. 1, 2, and 3, have been manufactured and sold by the defendant continuously since 1865, that he admits, without proof by the defendant, that such faucets were manufactured and sold and used in the United States long prior to the date of said patent No. 193,840, and have been manufactured and sold by the defendant continuously since 1865, and that said Exhibit Russell & Erwin Catalogue was printed and circulated in the trade in 1861. But the plaintiff reserves the right to object, and will object, at the trial of the case, that such evidence, nor any part thereof, is admissible, and this admission as to the manufacture, use, and sale of such faucets, and that said catalogue was printed and circulated in the trade in 1861, is made expressly subject to said objection and reservation; and the parties hereto unite in requesting the court, in its finding, if it makes one, to rule upon the question whether such evidence is admissible. (6) The plaintiff has never been notified by the defendant of any infringement of the plaintiff's rights in and to his said patent No. 193,840. (7) Patent-office copies of the drawings and specifications of letters patent shall be admissible wherever certified copies of the same would be entitled to be received by the court, and to the same force and effect. (8) It is further stipulated and agreed that in the event that it shall be determined and adjudged herein that said defendant is liable to the plaintiff for royalties upon said 'safety faucets' and the said 'compression faucets,' as claimed by the plaintiff, the question as to the quantity of such 'compression' and 'safety' faucets so manufactured by the defendant, and the amount of the defendant's liabilities to the plaintiff thereon, shall, if the court approve, be referred to and be determined by a committee or auditor to be hereafter determined by the court, and that no proof of the amount of damages shall be required to be made until the question of the defendant's liability has been determined by the court in the manner aforesaid. It is understood that nothing herein is to prevent either party from offering any testimony admissible within the issues, not contrary to the foregoing. It is further understood that the defendant does not admit by anything herein that Exhibit Andrews Faucet is within the claim of the Andrews patent, or within the license sued on."

Edwin H. Rogers, for plaintiff.

Mitchell, Hungerford & Bartlett, for defendants.

TOWNSEND, District Judge. Upon all the evidence, I find the following facts:

The defendant, since the execution of said agreement, has manufactured and sold a certain style of faucets, under the name "Andrews Faucet," for which it has regularly accounted to the plaintiff, and on

which it has paid royalties as agreed. It has also manufactured and sold, during the same period, two other similar styles of faucets, known, respectively, as the "Safety Faucet" and "Compression Faucet," for which it has neither accounted nor paid royalties. "The plaintiff has never been notified by the defendant of any infringement of his rights in and to his said patent No. 193,840," referred to in said contract; he has never terminated said contract; and he has never demanded any royalty, either on said "safety" or "compression" faucets. The plaintiff claims that said faucets contain the improvements covered by said patent. The defendant denies said claim. The object of the Andrews invention, as stated in his specification, "is to provide a faucet which is inexpensive in its construction, easily repaired, and efficient in operation." It is illustrated and described as having an L-shaped body, A, internally threaded to receive a screw, B, and containing an enlarged passage, a, which forms a valve seat, $a^1$. In the body, A, is a lateral oblong aperture, $a^2$, for the escape of liquid from the faucet. The screw, B, is provided with a handle or thumbpiece, and its inner end has a square projection, b, fitted with packing. The body of the faucet is tapered so as to be easily forced into the vessel in which it is used. The advantages of this construction are "that it may be more cheaply manufactured, is more easily repaired, and is perfectly secured against leakage." The original claim was as follows:

"A faucet consisting of a body, A, having the passage, a, valve seat, $a^1$, lateral aperture, $a^2$, the screw, B, having the square projection, b, the packing disk, C, and screw, D, substantially as herein shown and described."

This was rejected on references to patents No. 183,445, granted to W. & R. Bentley October 17, 1876, and No. 189,760, granted to P. Lyons April 17, 1877. Each of these patents shows a lateral orifice. Thereupon said claim was amended so as to read as follows:

"The combination of internally threaded, L-shaped body, A, having valve-seat, a, and oblong aperture, $a^2$, the screw, B, having the projection, b, and the elastic packing secured to screw, B, as and for the purpose specified."

And upon this claim said patent was granted.

The general features of this construction were old. The Fenn faucet, for example, which is manufactured by defendant, and which has been on the market for more than 20 years, has the ordinary tapered body, and the internally threaded body, and screw provided with a handle, the valve seat and packing, and a nozzle or spout. It does not have the oblong lateral orifice, or the L-shaped body, of the Andrews patent. Other prior constructions show the elements of the Andrews combination in connection with other elements which altogether make a more elaborate and more costly faucet. Andrews dispensed with said other elements, substituted said lateral aperture for the spout, and thereby made the simpler and cheaper device to which he finally limited himself by the above claim. This combination consists of "the nozzleless, L-shaped body, with the open and

projecting screw plug, and the lateral orifice at the valve seat, whose greatest length is parallel to the valve seat." "In other words, the Andrews patent purports to make a complete faucet, with just that simple, L-shaped body, and the screw plug, that projects so you can operate it with the hand; and by making the faucet so simple, and by leaving off these parts, is the only way that the Andrews patent could be distinguished from the prior art." The "safety" and "compression" faucets are not L-shaped, but have the ordinary body and nozzle of the prior art. They do not have the screw plug integral with a thumbpiece, and accessible to the hand, but require, for their operation, separate cranks or keys. They have a cover screwed on, which is open to receive a key. Instead of the oblong aperture of the Andrews patent, they have a nozzle or spout. In other details they depart from the Andrews combination, and follow the prior art. But the faucets manufactured, stamped, and accounted for as Andrews faucets are also unlike the Andrews patent. In fact, their construction is not substantially different from that of the "safety," and "compression" faucets, except that the former are more cheaply made, and do not have a cover screwed onto the body.

By the contract to pay for faucets containing the patented improvement, the defendant agreed to pay for the faucets made by it, which, by reason of the omission of such unnecessary details of construction as the Adams patent dispensed with, were of a simpler and less expensive construction, such as the Andrews patent sought to secure. The "safety" and "compression" faucets do not differ from the prior art in these respects. They do not contain the patented improvements of Andrews, which consisted in a combination comprising the nozzleless, L-shaped body, with open, projecting screw plug, and oblong lateral orifice, specifically claimed by Andrews. As already stated, they differed from the Andrews faucet made by defendant in having a top piece screwed onto the body of the faucet, which covered the screw piece so that it could only be reached by a lever, and was not accessible to the hand. As to the so-called "Andrews Faucets," I hold, as matter of law, that defendant, having stamped said faucets with the Andrews patent, and having accounted and paid for the same, is estopped to deny that they do not contain the patented improvement of Andrews. I further hold, as a matter of law, that the defendant is not estopped to deny that the "safety" and "compression" faucets do not contain the patented improvement, because similar faucets had been manufactured and sold by it for more than 20 years; because said faucets do not have the L-shaped body, the oblong lateral aperture, or the handle or thumbpiece of the Andrews patent; because the defendant neither sold, stamped, nor represented them as containing the patented improvement; and because it does not appear either that, by any act or omission on the part of the defendant, plaintiff was led to believe that said faucets were within the patent, or that the defendant represented them as such, or that the position of the plaintiff was in any way altered to his prejudice by any representations, acts, or omissions on the part of defendant; and, furthermore, because there is no evidence to contradict the evidence of the expert for defendant that said "safety" and "compression"

faucets do not contain the patented improvement of Andrews. While plaintiff has accepted royalties on the Andrews faucets for several years, he never made any claim on account of the sale of said "safety" and "compression" faucets, until just before the bringing of this suit; although it does not appear, otherwise than by the stipulation that "he has never been notified by defendant of any infringement of the plaintiff's rights," that he did not know, or might not have known, of the manufacture of said "safety" and "compression" faucets, which have been extensively advertised and sold to the trade. It does not appear that the defendant, at the time the contract was made, agreed to treat such "safety" and "compression" faucets as within the contract, or that the parties at that time adopted any standard or accepted any sample whereby the question was determined as to what faucets should be considered as containing the patented improvement. As to the evidence offered to show the prior state of the art, I rule that the same is admissible, not to invalidate the Andrews patent, but to explain the latent ambiguity in the language, "containing the patented improvement," and as bearing upon the situation of the parties, and their object in making said contract. Let judgment be entered for defendant in accordance with this opinion.