SPROULL v. PRATT & WHITNEY CO.

(Circuit Court, S. D. New York. August 21, 1899.)

1. PATENTS—CONSTRUCTION OF LICENSE—ROYALTIES.

A license to manufacture and sell articles under a number of patents owned by the licensor, "during the unexpired term thereof," also such other improvements therein as might be made or acquired by the licensor during the continuance of the agreement, where the articles related to the same art, and were ordinarily used conjointly, is an entire agreement for a single license, and binds the licensee to pay the royalty stipulated on all the articles manufactured and sold during the time any one of such patents remains in force.

2. SAME—ACTION FOR ROYALTIES—DEFENSES.

A licensee who agreed to manufacture an article under a certain patent, who stamped the article with the date of such patent. and advertised and sold it as made thereunder, and who regularly paid the royalties thereon under the license for a number of years, is estopped to set up as a defense to a claim for further royalties that the article as made was not covered by the patent.

This was a suit for an accounting for royalties under a license to manufacture and sell articles under certain patents.

J. Edward Ackley and Paul N. Turner, for complainant.

Saunders, Webb & Worcester, for defendant.

TOWNSEND, District Judge. Final hearing on bill for an accounting, and answer denying liability, under the provisions of the following contract:

"This agreement, made and entered into this 26th day of May, 1888, by and between De Lancy Kennedy, of the city of New York, party of the first part, and the Pratt & Whitney Co., a corporation organized under the laws of the state of Connecticut, located and doing business in Hartford, county of Hartford, in said state, witnesseth, that whereas, the said party of the first part is sole owner of letters patent of the United States for improvements in gripping and cutting tools, punches, &c., numbered and dated as follows, viz.: No. 148,566, dated March 17, 1874; No. 161,968, dated April 13, 1875; and No. 376,609, dated Jan'y 3, 1888; and No. 267,751, dated November 21, 1882,— and has granted licenses to several parties to make for their own use in their own works only, but not for sale to others, the punches for punching metals as patented under patent No. 161,968, dated April 13, 1875, but no other rights or privileges; and whereas, the said party of the second part is desirous, for itself, its successors and assigns, of manufacturing and selling the machine, punches, &c., under said letters patent, and under such letters patent as may hereafter be acquired by said party of the first part for improvement in the said machines and punches, and is desirous, also, of having the exclusive right to said manufacture and sale during the unexpired term of said patents, except in so far as license to make said punches has been already granted by said party of the first part as aforesaid: Now, therefore, in consideration of the former agreement and covenants of each party hereinafter set forth, the party of the first part hereby gives and grants unto the party of the second part, its successors and assigns, the sole and exclusive right, except as to parties above named, to whom license to manufacture has already been granted,

to manufacture in the United States of America, and sell in the United States and other countries, the machines, punches, &c., under the aforesaid letters patent, during the unexpired term thereof; also, such other improvements therein as he may make or acquire during the continuance of this agreement. Said party of the first part further agrees to devote and use his whole time for twelve months from the signing of this instrument, and no longer, unless upon the request of the party of the second part, to the introduction and sale in the United States and Canada of the above-mentioned articles manufactured by the party of the second part; to accept, as full compensation for his time, services, and traveling expenses for said twelve months, one hundred and thirty-five dollars per month, payable monthly in advance. The party of the second part promises and agrees to manufacture at its own cost and expense, in such reasonable quantity as shall meet the demand of the market of the United States and other countries, the said machines, punches, &c., and make earnest endeavor to sell them; to employ said party of the first part for twelve months from the signing of this instrument to introduce and sell in the United States and Canada the said machines and punches manufactured by it, and to pay him for said services one hundred and thirty-five dollars per month, payable monthly in advance; to render to said party of the first part a full and correct report on or about the first day of the months of July, October, January, and April in each year of sales, wherever made, of said machines and punches, &c., during the preceding three months, and to pay said party of the first part during said four months twenty (20) per cent. of the proceeds of such sales as royalty, excepting upon sales of punches numbers 10, 11, 12, upon which three sizes the royalty to be paid is only fifteen (15) per cent."

Another patent claimed to be for an improvement was taken out by Kennedy in 1891. The material facts, in addition to those which appear from said contract, will be stated in the course of the discussion. The chief question involved is as to the interpretation of said contract.

The defendant contends "that it obtained, as to each of the four patents named, the exclusive right to make and sell during the unexpired term of that patent, and no longer, the invention covered by that patent, and any improvement which Kennedy might make or acquire on that invention," and that it was only bound to account for and pay royalties on sales made under each patent or improvement thereon during the life of said patent, and no longer; and, in support of this contention, insists that it appears from the contract that the tools, machines, and punches were separate articles, to be used separately, and that it should therefore be presumed that the licensee could not have intended to pay a license to manufacture any article after the expiration of the patent therefor.

The complainant's contention is as follows:

"By the agreement in suit the defendant bound itself to pay Kennedy or his representatives a fixed percentage of all sales of all machines, punches, and couplers sold by it until the termination of the patented improvement of 1891, or at least until the expiration of the youngest patent mentioned in the agreement."

Defendant agreed to manufacture said machines and punches to meet the demand of the market; to employ said patentee to introduce and sell them; to pay him in each year a certain royalty on the proceeds of sales thereof, wherever made. The only time limit stated is, "during the unexpired term [not terms] of said patents," or, as to improvements, "during the continuance of this agreement."

In the absence of any stated apportionment of time or royalty,

the contract is, in its nature, entire, and it is doubtful whether the court would have the right to make it divisible, at least without proof by defendant of a substantial amount of separate use of said patented articles. The advertisements of said machines and tools showing conjoint use; defendant's admission that the machine, coupling, and punch are ordinarily operated together; the fact that, while the rights conferred were of unequal value, the defendant did not apportion the royalties in the payments under the agreement, but actually accounted for and paid the same in a lump sum, and continued so to pay for a considerable time after two of the patents had expired; the fact that the youngest patent, in a certain sense, controlled the punch and machine, because it coupled them together, and that the grant of the right to manufacture all improvements which Kennedy might make or acquire, not during the unexpired term of any single patent, but "during the continuance of this agreement," gave a contingent right of great possible value,—all support the construction of the agreement as an entire agreement for a single license for several patents, expected to be ordinarily used conjointly; and this construction gives effect to all the clauses of said agreement, and is supported by the doctrine of contra proferentem. In view of these conclusions, I am inclined to think that defendant should pay the agreed royalty, based on the whole price of all of said articles, and of any combination of said articles containing any part of the patented inventions during the life of any of said patents.

The defendant contends that it is not liable to account for the punch manufactured by it, and marked "Patented Nov. 21, 1882," the date of one of the patents covered by said agreement, and on which it regularly paid royalties, because said punch corresponds with a construction shown by a drawing in said patent, which was disclaimed by the patentee, and differs in minor details from the construction claimed by the patentee. If this defense were satisfactorily shown, it would be so inequitable that it should not be sustained. Having agreed to manufacture under said patent, having stamped said punch with the date thereof, having advertised and asserted that it did manufacture the Kennedy punch, and having accounted and paid royalties on said theory, it should now be estopped to make said defense. Andrews v. Landers (C. C.) 72 Fed. 670. There is no evidence that defendant manufactured under the Kennedy 1891 patent, issued subsequent to the making of said agreement, or did anything in reference thereto by reason of which it should be liable to account.

A decree may be entered for an accounting in accordance with the views herein expressed. If it shall appear upon said accounting that a considerable part of said articles have been sold separately, and not to be conjointly used, that fact may be found by the master, and the parties may be further heard on the coming in of the report.