## LIMBERSHAFT SALES CORPORATION v. A. G. SPALDING & BROS.

### No. 241.

Circuit Court of Appeals, Second Circuit.

April 29, 1940.

Lewis & Kelsey, of New York City (Charles J. Lane, of New York City, of counsel), for appellant.

McLaughlin & Stickles, of New York City (Chester B. McLaughlin, of New York City, Frank H. Foley, of Mount Vernon, N.Y., and Gordon W. McKean, of New York City, of counsel), for appellee.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

Upon a jury's verdict the plaintiff has recovered judgment for breach of a written contract, by the terms of which the defendant was granted a non-exclusive li-

cense to manufacture and sell golf clubs embodying the invention covered by United States Patent No. 1,662,712. The licensee agreed to pay a royalty of 35 cents (later reduced to 13 cents) per shaft on shafts used in such clubs. The shafts were to be purchased from a manufacturer designated by the plaintiff and the royalty to be paid by the licensee was to be included in the manufacturer's invoice. The contract was executed in June 1933, and thereafter the defendant purchased from the American Fork and Hoe Company, the designated manufacturer, a large number of shafts, part of which were known by the symbols L T and part by the symbols T F. The manufacturer's invoices of L T shafts included the royalty; all of them were paid by the defendant. The manufacturer's invoices of T F shafts, which were also paid, did not include the royalty; and the defendant refused to pay royalties on such shafts, although demanded by the plaintiff. Thereafter this action was brought.

Upon the trial the real issue was whether golf clubs made by the defendant with T F shafts embodied the patented construction. Expert golfers testified that L T and T F shafts had the same "feel". No expert testified regarding the patent. The plaintiff sought to prove its case by showing that the defendant had knowingly paid royalties on L T shafts and that the shafts on which it had refused to pay royalties were in all material respects similar to the L T shafts. The judge's original charge gave the impression that the verdict would turn on what the jury might find as to the defendant's knowledge that royalties had been included in the invoices of L T shafts and the similarity of T F shafts to L T shafts. Only after concluding his main charge did the trial judge give an instruction, at the plaintiff's request, stating the real issue, namely, whether the T F shafts were within the scope of the patent; and he left it to the jury to find the scope of the patent in view of prior art patents introduced as an exhibit. To this the defendant excepted. It also moved for a directed verdict. Decision was reserved and the motion denied after return of the jury's verdict. The denial of this motion and leaving to the jury the scope of the patent are the errors chiefly relied on by the appellant.

Patent No. 1,662,712, under which the plaintiff granted a license to the defendant, is for a golf club having a shaft of extreme flexibility. The two claims of the patent read as follows:

"1. A golf club of which the shaft is so limber for the greater part of its length that, in the making of a stroke, it bends in a substantially continuous arc from the grip to the head, to such a material degree that the bending action is clearly perceptible to observers of the swing or stroke.

"2. A golf club comprising essentially a shaft markedly limber from end to end and a conventional head, the limberness of the shaft being such that if the club is grasped at either end and held, at rest or in movement, at a substantial angle to a vertical position, the shaft will perceptibly bow or bend in a continuous symmetrical arc."

The specifications emphasize throughout that the shaft must be of "excessive", "abnormal" or "extreme" limberness. It is said to differ fundamentally from other shafts in that it possesses a limberness so marked that it will bow more or less under the weight of the head and will appear to any one watching a player swing or waggle the club to be of arcuate form for practically its full length. The materials recommended for the shaft are solid rubber, woven rattan, rawhide such as is used in buggy whips, or a coil spring provided with a suitable cover, such as leather, felt, rubber or a woven fabric. The preferred form is to "provide a resilient metal reinforcement of some type," as shafts made purely of rattan or rawhide are likely to break.

The "swingrite" driver introduced as an exhibit is an admitted embodiment of the patent. It is exceedingly whippy when swung and bows when held horizontally. Examples of clubs made with L T and T F shafts are also before us as exhibits. The T F shaft is made of tubular steel having a wall thickness of .018 of an inch and a diameter at the butt end of .500 of an inch which is stepped down to .270 for woods, and .355 for irons, at the head end. The L T shaft has a butt diameter of .432 of an inch, and eight "step downs" instead of eleven. When held in a horizontal position no bow is apparent in either shaft. The district judge saw none (fol. 989); nor can we. When the T F clubs were swung in the court room the district judge could see no bending in a continuous arc from the grip to the head (fol. 993), but he thought it was for the jury to say whether they could see such a bending. The T F shafts are not excessively whippy and to us it seems manifest that no reasonable jury could find that these shafts were

within the claims of the patent interpreted, as they must be, in the light of the specifications and with the limitations imposed by the prior art. Tapered tubular steel shafts long antedated the patent in suit. The Knight patent (1910) states: "Such a shaft is at once so light and so rigid that it is not twisted by the hardest blow, and yet offers any desired amount of suppleness to suit the taste of the player and may be arranged to afford this suppleness at any point in the shaft length. * * * With my hollow steel shaft the metal may be so distributed and the suppleness placed at such a point that a wide range of selection may easily be afforded."

The Offutt patent (1916) suggests metal tubing to secure flexibility, whip and strength greater than a wooden shaft supplies. It is unnecessary to mention other prior patents. The invention of the patent in suit must obviously be limited to its insistence upon "abnormal" limberness distributed throughout the length of the shaft or at least from the club head to the grip. Indeed, this is what the appellee asserts to be the invention, and the claims call for a bending action which is "clearly perceptible to observers" (claim 1) or causes the shaft to "perceptibly bow or bend in a continuous symmetrical arc" (claim 2). We think it clear that the T F shafts do not perceptibly so bend. When the question of noninfringement is sufficiently plain the trial judge may direct a verdict. Automatic Pencil Sharpener Co. v. Boston Pencil Pointer Co., 1 Cir., 279 F. 40; Hurin v. Electric Vacuum Cleaner Co., 6 Cir., 298 F. 76; see Singer Company v. Cramer, 192 U. S. 265, 275, 24 S.Ct. 291, 48 L.Ed. 437. The defendant's motion for a directed verdict should have been granted.

■ It is immaterial that the defendant paid royalties on L T shafts which were no more flexible than T F shafts. A licensee is estopped to deny the validity of a patent under which he has accepted a license; but he is entitled "to whatever narrow construction the language of the claims may warrant and the condition of the prior art may require." Standard Plunger Elevator Co. v. Stokes, 2 Cir., 212 F. 941, 943; see also Westinghouse Co. v. Formica Co., 266 U.S. 342, 351, 45 S.Ct. 117, 69 L. Ed. 316. Nor need he, in the absence of compelling equities, pay royalties on devices that do not embody the patented invention merely because he paid royalties in the past on similar devices in the mistaken belief that the patent included them. Baker Oil Tools v. Burch, 10 Cir., 71 F.2d. 31, 35; Dodge Mfg. Co. v. Patten, 7 Cir., 60 F.2d 676, 681; Galion Iron Works & Mfg. Co., v. J. D. Adams Mfg. Co., 7 Cir., 105 F.2d 943, 947. In the case at bar there are no "equities" to raise an estoppel against the defendant. The clubs made with the T F shafts carried no reference to the plaintiff's patent or to the "Limbershaft" trade-mark; nor does it appear that the license was negotiated on the understanding that L T shafts embodied the patent. Cf. Andrews v. Landers, C.C.Conn., 72 F. 666, 670; Sproull v. Pratt & Whitney Co., C.C.S.D.N.Y., 97 F. 807, 809; Miami Cycle & Mfg. Co. v. Robinson, 6 Cir., 245 F. 556, 565.

■ The appellee argues that the royalty contract was construed by the conduct of the parties with respect to the L T shafts "as including the principles of the T F shafts." By way of recitals the contract states that shafts containing the patented improvements "(hereinafter called Limbershafts)" are being manufactured for the licensor, and that the licensee desires to manufacture and sell golf clubs containing said improvements. Following the licensee's promise to purchase all Limbershafts for use in such clubs from the licensor's designated manufacturer, to whom the licensee's orders are to be sent and by whom shipments and invoices are to be made direct to the licensee, occurs the following sentence: "Such shafts shall be furnished in accordance with the recognized standards of Limbershafts." It is urged that "the recognized standards of Limbershafts" is an ambiguous phrase and makes applicable the familiar principle that where there is doubt as to the proper construction of an instrument, the construction which the parties have put upon it is entitled to great consideration. Philadelphia R. R. Co. v. Trimble, 10 Wall. 367, 377, 77 U.S. 367, 377, 19 L.Ed. 948. But, as the appellee itself says, the quoted sentence was not put in as a definition of the scope of the license agreement but to protect the licensee on the question of quality. We agree that such was its purpose and meaning. There is no ambiguity in the contract as to the scope of the license. The license is as broad as the patented invention and no broader. The subsequent conduct of the parties in misinterpreting the scope of the patent does not put non-infringing devices within the terms of the licensee's promise to pay royalties. If the T F shafts are

not within the claims of the patent, they are not within the royalty contract. As already stated we are clearly of opinion that such shafts are not covered by the patent.

Finding error in the denial of the defendant's motion for a directed verdict, we must reverse the judgment. Since decision on the motion was reserved until after verdict, we may direct a judgment of dismissal on the merits. Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636; Sheehan v. New York, N. H. & H. R. Co., 2 Cir., 93 F.2d 442, 444. Even without such reservation this may be done under the new Rules of Civil Procedure, 28 U.S.C.A. following section 723c. See Conway v. O'Brien, 111 F.2d 611, handed down herewith. It is so ordered.