**DWIGHT & LLOYD SINTERING CO., Inc.,
v. AMERICAN ORE RECLAMA-
TION CO.**

District Court, S. D. New York.

Dec. 15, 1941.

See, also, 44 F.Supp. 391; 44 F.Supp. 396.

Spencer, Ordway & Wierum, Otto C. Wierum and John A. McManus, all of New York City, for plaintiff.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, Theodore Kiendl, John L. Jackson, and A. S. Edmonds, all of New York City, for defendant.

BONDY, District Judge.

Defendant concedes that the sub-licensees found by the master to have used patents 1,441,003, 1,469,521, 1,471,402, 1,491,778, 1,618,205 and 1,673,891 actually did use them and that defendant accordingly is liable for the royalties found by the master to be due plaintiff for their use.

Defendant contends that no royalties are due for the use of some of the other patents sued upon because they are invalid.

■ Defendant does not dispute that the courts have repeatedly stated that a licensee is estopped to deny the validity of his licensor's patents, but it asserts that the courts have intended thereby only that a licensee can not successfully maintain that his licensor's patents are invalid for lack of invention. Defendant therefore has challenged the validity of some of plaintiff's patents on grounds other than lack of invention.

The attention of the court has not been directed to any authority that limits the estoppel of a licensee to an estoppel to deny invention. Moreover, the courts have indicated that a licensee may not question the validity of its licensor's patents upon any grounds. In Milligan v. Lalance & Grosjean Manufacturing Co., C.C., 21 F. 570, the court held that a defendant whose position was described as similar to a licensee could not set up the defense that the patent was invalid because the novel element of the patent had been inserted by an attorney without authority from the inventor. In Hewitt v. American Telephone & Telegraph Co., 2 Cir., 272 F. 392, the court stated that since a licensee is estopped to deny validity, and since invention is a requirement of validity, a licensee is estopped to deny invention, thus clearly indicating that the estoppel to deny invention is only part of the broader estoppel to deny validity on any ground. In Westinghouse Co. v. Formica Co., 266 U.S. 342, 349, 45 S.Ct. 117, 120, 69 L.Ed. 316, relied upon by defendant, the court stated that the estoppel against the assignor prevented an attack upon the "utility, novelty or validity" of the patent. Defendant, therefore, may not attack the validity of plaintiff's patents upon any ground.

■ At the request of the defendant, who was plaintiff's exclusive licensee, and in accordance with an agreement between the plaintiff and defendant, plates referring to patents involved in this action were placed upon machines used by many sub-licensees of defendant. On all these plates it was set forth that defendant was plaintiff's sole licensee. The plates varied, however, in that some plates referred to some of plaintiff's patents not referred to in other plates. In addition, defendant made payments to plaintiff between May 21, 1929, and March 31, 1932, for the use of all unexpired patents. These facts establish that both parties believed plaintiff's patents were being used by defendant's sub-licensees, and that defendant collected royalties from its sub-licensees on the theory they were using plaintiff's patents. Defendant, in view of all the circumstances, can not successfully maintain in this action that the machines bearing plates referring to patents which plaintiff claims were used by the machines did not embody such patents. See Andrews v. Landers, C.C., 72 F. 666, 670; Sproull v. Pratt & Whitney Co., C.C., 97 F. 807, 809, cited with approval in Limbershaft Sales Corporation v. A. G. Spalding & Bros., 2 Cir., 111 F.2d 675, 677; Covell v. Bostwick, C.C., 39 F. 421, 424; Piaget Novelty Co. v. Headley, 2 Cir., 108 F. 870, 872, 873; Niagara Fire Extinguisher Co. v. Hibbard, 7 Cir., 179 F. 844, 850; Lathrop v. Rice & Adams Corporation, D. C., 17 F.Supp. 622, 626. Compare Barber Asphalt Paving Co. v. Headley Good Roads Co., D.C., 283 F. 236, 239, affirmed 3 Cir., 292 F. 119, and Miami Cycle & Mfg. Co. v. Robinson, 6 Cir., 245 F. 556, 565.

In Piaget Novelty Co. v. Headley, supra, the defendant was estopped to deny that certain articles, not stamped by it with the plaintiff's patent date, were covered by plaintiff's patent in view of the fact that the defendant had stamped other articles precisely the same with the patent date.

■ Some sub-licensees' machines did not have plates referring to patents which plaintiff claims were used by such machines. These, however, so far as material in this action were substantially the same as the machines bearing plates referring to those patents and alleged by plaintiff to be using those patents. Defendant accordingly is estopped to deny that such machines

without plates did not use plaintiff's patents as alleged by plaintiff.

The master's report, excepting only as to patent 1,838,403, hereinafter more fully discussed, accordingly should be sustained because defendant may not deny validity nor question user.

Assuming, however, that defendant could raise the question of non-user, the master's finding is correct as to the user of many of the patents by sub-licensees of defendant.

■ The master states in his opinion that patent 1,215,739 for a mechanism to feed constantly to a sintering machine fines of uniform condition was used by defendant's sub-licensees as set forth in plaintiff's Exhibit 167.

The claims of the patent include as an element of the patented combination "a flat conveyer belt" as the means of withdrawing material from hoppers and delivering it to a continuously traveling endless conveyer.

The evidence establishes that the rotating table type feeder used by defendant's sub-licensees performs the same work as the flat belt conveyer in substantially the same way and accomplishes substantially the same result. Both transport a continuous stream of material on a horizontal plane from the bottom of the hoppers to the receiving endless conveyer. The rotating table carries the material to a point where it is forced off the table by an obstructing plate; the flat belt conveyer drops the material off at a point where the belt runs around the last roller supporting it. The rotating table is a mere equivalent of the flat belt conveyer and would readily suggest itself to any mechanic skilled in the art. See Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147.

The claims also include "means for receiving said mass" as an element of the combination. The means referred to in the specifications and drawings are hoppers known as "surge-bins" into which the fine metal ore particles are fed immediately prior to delivery to mixers known as "pug-mills," from which they are delivered as a homogenous mass into a sintering machine.

The "surge-bins" are used so that the flow of the material from the "pug-mills" to the sintering machine remains constant and unaffected by temporary closing of any of the other parts of the apparatus used to hold or carry the ore particles before they reach the "pug-mill".

■■ As between plaintiff-licensor and defendant-licensee plaintiff's patents should be given a very liberal interpretation. See Freeman v. Altvater, 8 Cir., 66 F.2d 506, 508, certiorari denied 290 U.S. 696, 54 S.Ct. 132, 78 L.Ed. 598; Hewitt v. American Telephone & Telegraph Co., 2 Cir., 272 F. 392, 394. Accordingly, the court will not restrict the language of the claims to mean that "surge-bins" are the only means for receiving the material claimed in the patent.

The flow-sheets of the plants of defendant's sub-licensees show that there are "means for receiving the said mass" in each plant, even though "surge-bins" are not used.

The master found that certain sub-licensees used iron patent 1,254,316.

■ In Dwight & Lloyd Sintering Co. v. Greenawalt, 27 F.2d 823, 828, 829, claims 1, 4, 6 and 8 were held invalid. Three years later, in 1931, claims 4 and 8 were disclaimed by the patentee. An unreasonable delay in disclaiming claims held to be invalid invalidates the entire patent. Maytag Co. v. Hurley Co., 307 U.S. 243, 59 S. Ct. 857, 83 L.Ed. 1264; Ensten v. Simon, Ascher & Co., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453. Since, however, defendant is estopped to deny validity on any grounds, this court will not consider whether the patent was void because of unexcused delay in disclaiming.

Although the process used in the sub-licensees' plants comes within the language of claim 8, claims 9 to 12 inclusive not in issue in the Greenawalt case, also describe the process used in the sub-licensees' plants.

Because defendant may not question validity in this action, this court will not consider whether ignition patents 1,433,349, 1,433,350, 1,433,351 and 1,433,353 are void as a result of any reasoning of the court in the Greenawalt case, nor whether patents 1,433,349 and 1,433,351 are invalid because of unreasonable delay in disclaiming those claims held to be invalid in the Greenawalt case.

Were it not for the estoppel to deny user, the court would find with reference to patents 1,433,349 and 1,433,351 that the devices used by defendant's sub-licensees alleged by plaintiff to have used these patents are substantially the same as the device disclosed by patent 916,393, which was part of the prior art relied on by defendant. The claims of patents 1,433,349 and 1,433,351 accordingly will not be interpreted to in-

clude the devices used by defendant's sub-licensees.

Were it not for the estoppel to deny user, the court would find with reference to patents 1,433,350 and 1,433,353 as follows:

Plaintiff relies upon claims 1 and 12 of patent 1,433,350. Both of these claims refer to a fire chamber and an igniter as separate elements of the combination claimed, while the gas nozzles of the Yost-Klugh apparatus, which is used by defendant's sub-licensees alleged by plaintiff to have used patent 1,433,350, burn gas and the device of the Evergreen Mining Company burns powdered coal in an open bottom fire chamber which constitutes the igniter. It follows that these claims do not cover the Yost-Klugh or Evergreen machine.

Claim 5 of patent 1,433,353 reads upon the Yost-Klugh and Evergreen furnaces, which heat "a sharply laterally defined, covered and relatively broad area of the upper surface" of the ore, even though the Yost-Klugh furnace burns a gaseous or liquid fuel and the Evergreen device burns powdered coal in an open bottom chamber which confines the hot igniting materials laterally.

Patents 882,517, 882,518 and 916,393, relied upon by defendant as prior art, do not disclose width of the area to be ignited, the covering of that area, or the sharp lateral limitation of the igniting materials within that area. Patent 839,064, also relied upon by defendant discloses a porous hearth furnace. The igniting materials are sharply laterally defined by the sides of the furnace; the area to be ignited is as wide as the furnace; and the top of the furnace covers that area. Such a furnace, in which the top and sides are rigidly and permanently connected with the furnace bed differs materially from an open bottom igniter which is not connected to the ore holder and which nevertheless encloses flames over a broad area of ore continuously passing beneath it.

Accordingly the prior art will not be interpreted, as between plaintiff and defendant, to limit the scope of the claims of patent 1,433,353 so as not to include the ignition devices used by defendant's sub-licensees.

The master found that Evergreen Mining Company, Inland Steel Company and Youngstown Sheet & Tube Company used the Hyde pallet patent 1,838,403. Plates referring to the Hyde patent were not found at any of these plants, and defendant is not estopped to raise the defense of non-user of this patent.

The evidence establishes that for at least two years before the application for patent 1,838,403 was filed some of defendant's sub-licensees used a pallet with removable sides substantially similar to the pallet used by the three above sub-licensees. This pallet has an upper flange on the outside of the removable part. In view of this prior art, patent 1,838,403 should be interpreted so as to limit it to the construction disclosed in the specification and drawing of the patent, which shows the upper flange of the pallet on the inside of the removable part. Consequently, the Master's findings with respect to the use of this patent should not be sustained.

Defendant concedes in its brief that, if the court finds defendant's sub-licensees did use plaintiff's patents as claimed by plaintiff, there were not any over-payments between May 21, 1929 and March 31, 1932. Evergreen Mining Company, Inland Steel Company and Youngstown Sheet & Tube Company did not use patent 1,838,403, patented December 29, 1931. These sub-licensees, however, used other patents of plaintiff which were subsisting between December 29, 1931, and March 31, 1932, thus entitling plaintiff to royalties on sinter produced at these plants during that period despite the non-user of patent 1,838,403. This non-user, therefore, does not support defendant's claim of overpayment.

Defendant's objections 9 and 28 to the Master's findings are sustained. The other findings and conclusions of the Master are adopted to the extent indicated in this opinion.