## Angier *versus* The Eaton, Cole & Burnham Company.

1. Where the evidence in a case is all one way, and is so satisfactory that a court would not sustain a verdict that should find against it, the Supreme Court will not reverse the judgment because the court below declared the true effect of the evidence instead of submitting it to a jury.

2. Eister *v.* Paul, 4 P. F. Smith, 196, followed.

3. Where the licensee of a patent invalid by reason of a prior outstanding patent for the same invention, can show that the owner of the prior patent is asserting his exclusive right thereto, by supplying the market with the patented article, and forbidding all interference on the part of others, whereby said licensee is deprived of the enjoyment of the monopoly for which he contracted, he may defend in an action for royalties on the patented articles, on the ground of actual failure of consideration.

4. *Semble,* however, that while the patent is apparently valid and the licensee is enjoying the benefit of the supposed validity, he is bound to pay the stipulated royalty, and cannot set up as a defence the actual invalidity of the patent.

October 18th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Venango county :* Of October and November Term 1881, No. 191.

Assumpsit, by J. Dorsey Angier against The Eaton, Cole & Burnham Company, to recover the amount of certain royalties for the manufacture by the defendant of the " Crocker Check Valve," a patented article, under an agreement between the plaintiff and the defendant, the material portions of which were as follows :—

[Angier *v.* Eaton, Cole & Burnham Co.]

" The said party of the first part [plaintiff], in consideration of the performance by the second party [defendant] of the agreement hereinafter stated, to be by it carried out, hereby grants to the said second party the exclusive right and privilege to manufacture and sell the ' Crocker check valve,' a patented invention. The Eaton, Cole & Burnham Company hereby agree to manufacture said Crocker check valves in sufficient quantity to supply the demand therefor.

" All valves manufactured by the said second party are to be stamped with the patent mark and with the number.

" The said second party shall, on or before the fifteenth day of each month after the present, make and render to the first party a statement showing the sales of the previous month ending on the last day thereof. And the said second party (with said statement), shall send to the first party on or before the fifteenth day of each month as aforesaid, the money for each and every valve sold as aforesaid, at the rate of $2.50 for each net."

Prior to this agreement the plaintiff and the defendant were joint owners of the said " Crocker patent."

Pleas, payment with leave, and special pleas averring failure of consideration, in that owing to a prior patent issued to one James Old the patent under which the agreement was executed was invalid.

The defendant admitted the manufacture and sale of 1201 check valves under the agreement.

On the trial, before Taylor, P. J., the defendant presented the following point:

9. " The uncontradicted evidence is that the plaintiff and defendant entered into this contract on the day of its date ; that the plaintiff thereby granted to the defendant " the exclusive right and privilege to manufacture and sell the ' Crocker check valve,' a patented invention." That the patent for such invention was one issued to Frederick Crocker October 11th 1864. That the plaintiff, previous to the making of the contract, had been informed that there were prior letters patent which affected the question whether the said letters patent to Frederick Crocker were valid ; that plaintiff did not communicate this information to the defendant ; that the defendant had no knowledge of the existence of the prior patent, but believed the letters patent to F. Crocker were valid ; the defendant manufactured and sold check valves and rendered accounts to the plaintiff and paid him the royalty agreed upon until information was given it that it infringed by such manufacture upon the letters patent granted February 18th 1862, to James Old ; that it notified the plaintiff and discontinued rendering accounts, and since has refused to pay any royalty ; that the check valve patented by

Frederick Crocker is shown and described in said letters patent issued to James Old, and also shown and described in certain other letters patent issued to James Thomas, Jr., September 13th 1864, both of which letters patent are prior in time to the letters patent issued to Frederick Crocker, October 11th 1864; that James Old granted a license. under his patent to J. B. Sheriff & Son to manufacture and sell check valves; that such licensees made and sold under such license the same identical check valve for the same purpose as that made and sold by the defendant under the contract sued on in this case; that the monopoly of the defendant, granted it by this contract, was thereby destroyed; that neither the defendant nor the plaintiff had any power or legal right to prevent said J. B. Sheriff & Son from manufacturing such check valves; that said J. B. Sheriff & Son seriously injured the trade of the defendant; that the competition of the said J. B. Sheriff & Son in the market required the defendant to reduce the price of the check valve, and thereby diminished its profits: that the defendant therefore received several thousand dollars less profits than it would have received had it in fact received the exclusive right and privilege. to manufacture and sell the Crocker check valves. These facts being proved by uncontradicted evidence you are directed to render a verdict for the defendant."

*Answer.* "All points but the last one having been withdrawn, it is affirmed. The plaintiff having contracted to sell the defendant an exclusive right, which was the sole consideration for the agreement to pay the sum claimed by the plaintiff; and the uncontradicted evidence showing that the plaintiff had no such right to convey, but that such right was vested in one James Old, by reason whereof the consideration for the promise to pay having entirely failed, the plaintiff ought not to recover."

The court instructed the jury, inter alia, as follows:

"These facts being proven and uncontradicted, you are instructed that the plaintiff cannot recover, and your verdict must be for the defendant."

Verdict accordingly for the defendant, and judgment thereon. The plaintiff took this writ of error, assigning for error, inter alia, the affirmance of the defendant's point, and the instruction of the court to find for the defendant.

*Roger Sherman*, for the plaintiff in error.—There having been no fraud in making the agreement, and no warranty of the validity of the patent, and the defendant having in fact enjoyed the monopoly contracted for, the mere fact that a prior patent for a similar invention had been issued to another person, who might have interfered but did not, was no defence to the payment of royalties on the articles admitted to have been manu-

[Angier *v.* Eaton, Cole & Burnham Co.]

factured and sold by the defendants. The consideration of the agreement was the enjoyment of a monopoly, not the parting of the title to the plaintiff's joint interest in the patent right. The defendant got what he contracted for, and we do not seek payment for more valves than he made and sold without interference from, or liability to account to, the owner of the Old patent: Kinsman *v.* Parkhurst, 18 Howard 289; Lawes *v.* Purser, 88 E. C. L. Rep. 930; Hall *v.* Conder, 89 E. C. L. Rep. 22; Marston *v.* Swett, 66 N. Y. Rep. 206; Palmer's Appeal, 28 Pitts. Leg. Jour. 299; Bellas *v.* Hays, 5 S. & R. 427.

*H. D. Hancock,* for the defendant in error.—By the plaintiff's " grant " of the exclusive right, etc., he warranted that he had title to convey not only the exclusive right to the valve described in this Crocker patent but to all valves of similar construction, which were known by the generic name of the " Crocker check valve." It being proved that he had not such right, there was a clear failure of consideration, and the defendant, having been led into an infringement of the Old patent by the plaintiff's concealment of its existence when the contract was entered into, has incurred liability to Old; and he cannot be also held liable to the plaintiff for royalties on the invalid Crocker patent: Marston *v.* Swett, 82 N. Y. 527; Holliday *v.* Rheem, 6 Harris 468; Bellas *v.* Hays, 5 S. & R. 427; Geiger *v.* Cook, 3 W. & S. 270; Fallis *v.* Griffith, Wright (Ohio) 303; Earl *v.* Page, 6 N. H. 480; McDowell *v.* Meredith, 4 Whart. 314.

The construction of the agreement was for the court, and the uncontradicted evidence having established the defendant's averments, the court properly instructed the jury to find for the defendant.

Mr. Justice STERRETT delivered the opinion of the court, January 2d 1882.

The general inquiries, suggested by the assignments of error in this case, are, whether there was any question of fact that should have been submitted to the jury; and, if not, whether, upon the facts established by the uncontradicted evidence, the defendant was entitled to a verdict. Both of these questions will be more readily answered by briefly noticing some of the more prominent facts disclosed by the testimony.

By assignment from the patentee the parties to this suit became joint owners of certain letters patent, issued October 11th 1864 to Frederick Crocker for an " Improvement in Lifting Pumps," better known in the oil producing business as the " Crocker check valve;" and, on March 11th 1876, they entered into a written agreement by which the plaintiff granted to the de-

[Angier *v.* Eaton, Cole & Burnham Co.]

fendant company " the exclusive right and privilege to manu-
facture and sell the ' Crocker check valve,' a patented invention."
In consideration thereof the defendant agreed to manufacture the
" valves in sufficient quantity to supply the demand therefor ;"
to render an account sales monthly and pay the plaintiff $2.50
for each valve sold.   The defendant accounted and paid for all
valves manufactured and sold prior to September 1876, at which
time it was formally notified that by the manufacture and sale
of the valves it was infringing letters patent issued to James
Old, February 18th 1862, more than two years prior to the date
of the Crocker patent.   The plaintiff was thereupon informed
of this fact and further payment of royalty was refused.   In
November 1876, a bill in equity was filed by James Old, in the
Circuit Court of the United States for the Western District of
Pennsylvania, against the defendants, charging the infringement
of his patent and praying for assessment of damages, &c.   This
suit was discontinued in January 1879, after the defendants had
been subjected to great outlay in defending the same.   The
present action was brought on the contract, in July 1878, to re-
cover the stipulated royalty on 1201 valves which the defendant
manufactured and sold from September 1876 to date of suit.

.   The substance of the defence, as shown by the pleadings,
was that the consideration, for which the company agreed to
to pay the royalty in question, had wholly failed ; that the sup-
posed patent under and by virtue of which it was to have and
enjoy " the exclusive right and privilege to manufacture and
sell the Crocker check valve," was invalid by reason of the
prior patent for a new invention precisely the same, in principle,
in mode of operation and in the results produced, as that covered
by the Crocker patent ; that check valves, identically the same,
and used for the same purposes as those made and sold by the
defendant under the contract in suit, were manufactured and
sold by licensees of James Old, the original patentee ; that
neither defendant nor plaintiff could prevent said licensees from
manufacturing and selling the valves ; that the competition thus
existing in the market required defendant to reduce the price of
the valves, and in consequence thereof its profits were several
thousand dollars less than they would have been if it had en-
joyed the exclusive right and privilege contemplated by the con-
tract.   These and other allegations on which the defence was
based were clearly proved by testimony that was neither contra-
dicted nor in any manner impeached.

The learned judge, after reciting the facts thus established,
instructed the jury to find for the defendant.   In this it is
claimed by the plaintiff that there was error.

It is very evident from an examination of the respective let-
ters patent that in every essential particular the " Crocker check

valve " is the same mechanical device that is described in and covered by the patent previously granted to James Old ; and hence the court was right in thus construing these instruments of evidence.   There is nothing in the verbal testimony that conflicts therewith ; on the contrary, the testimony of the experts is in full accord with the views expressed by the court.   Nor is there anything in the defendant's answer in the equity suit that would justify any other conclusion.   So far as the substantial identity of the valves is concerned, the evidence was all one way, and there was no question of fact for the jury to pass upon. There was really no dispute as to any of the material facts which the court treated as having been established by uncontradicted evidence.   It is true the court might have submitted the testimony to the jury, but under the circumstances there was no error in not doing so.   As was said by WOODWARD, C. J., in Eister *v.* Paul, 4 P. F. Smith 196, " where the evidence is all one way, and is so satisfactory that a court would not sustain a verdict that should find against it, we will not reverse the judgment because the judge declared the true effect of the evidence instead of submitting it to the jury."   There was no error therefore in practically ruling that there was no disputed question of fact for the jury to determine.

The next question is whether the court erred in holding, as matter of law, that upon the facts established by undisputed evidence the defendant was entitled to a verdict.

It cannot be doubted that the sole consideration for defendant's agreement to pay $2.50 for each valve manufactured and sold, was " the exclusive right and privilege to manufacture and sell."   That right was in the nature of a monopoly, and so long as it was enjoyed the defendant was bound to pay and did pay the consideration therefor ; but when, by reason of something beyond the company's control, it was deprived of that exclusive right ; in other words, when the consideration failed, without any fault of the defendant, why should it be compelled to pay the stipulated royalty ?   When the agreement was executed the Crocker patent was no doubt regarded, at least by the company, as valid ; and therefore sufficient to protect it in the enjoyment of the exclusive right intended to be secured by the contract. Whatever knowledge to the contrary the plaintiff may have had, he evidently assumed, in bargaining with the defendant, that the valve was a patented invention, covered and protected by the Crocker patent ; and, in consideration of the royalty, he expressly granted the exclusive right therein specified.   In its legal effect the agreement is a license to manufacture and sell the valves, but it is of such an exclusive character as practically to amount to a monopoly ; and, while it was enjoyed as such, the invalidity of the patent, without more, was no defense to the

[School District of the City of Erie *v.* Fuess.]

payment of the royalty. The recognized principle applicable to such licenses is that while the patent is apparently valid and the licensee is enjoying the benefit of its supposed validity, he is bound to pay the stipulated royalty, and cannot set up as a defence the actual invalidity of the patent; but when, in addition to the invalidity of the patent, by reason of a prior outstanding patent for the same invention, it is shown that the owner of the prior patent is asserting his exclusive rights thereunder by supplying the market with the patented article, forbidding all interference on the part of others, &c., and the licensee under the invalid patent is deprived of the enjoyment of the monopoly for which he contracted and in consideration of which he agreed to pay the royalty, he may defend on the ground of the actual failure of the consideration: Marston *v.* Swett, 82 N. Y. Rep. 527. That was a suit by a patentee against his licensee to recover royalty, in which the defense was failure of consideration; and the court say, " the substantial consideration to uphold these royalties was the transfer to defendants of a monopoly, the right to an exclusive use, and we see at once that the evidence offered tended to show the total failure of that consideration."

. . . . " It is impossible not to see that if the plaintiff's theory should prevail these defendants might be liable at one and the same time to pay royalties to the plaintiff, who had no patent, and to Goodfellow, who had. The injustice of such a result makes us slow to believe that any rule of law requires us to sustain it." This observation applies with equal force to the case before us.

It follows from what has been said that there was no error in directing a verdict for the defendant.

Judgment affirmed.