# Patterson's Appeal.

A paper box manufacturing company, in order to prevent the possible consequences of an injunction for the infringment of existing patents, and also in order to place itself in a better position to control the trade, contracted with A., the holder of a patent for making such boxes, and was granted exclusive privileges under said patent. It was also authorized to prosecute all persons infringing the same, and undertook to pay to A. certain royalties on all boxes manufactured. A clause in the contract provided that if in the course of litigation an injunction should be refused by the United States courts against any party infringing A.'s patent, thereby declaring the same untenable and invalid, all royalties were to cease. The company manufactured boxes under the contract, and continued for some time to pay to A. the stipulated royalties. Ultimately, however, it ceased to do so, whereupon A. filed a bill in equity to enforce payment. The company set up as a defence the invalidity of A.'s patent for lack of novelty. *Held*, that under the contract, the company was bound to pay the stipulated royalty until the judicial determination of the invalidity of A.'s patent by the refusal of an injunction against an infringer, and that, therefore, A. was entitled to the relief sought by him.

January 31st 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Court of Common Pleas No. 3, of *Philadelphia county:* Of July Term 1881, No. 76.

Bill in equity, by Cunningham S. Patterson, against the Novelty Paper Box Company, praying for an account, and that the defendant be decreed to pray the complainant certain royalties for the use of a patented invention.

The bill set forth: that by an agreement under seal, dated November 30th 1877, the plaintiff granted to the company defendant "sole and exclusively of all others the license and right to make, use and sell in the United States all the devices granted to Charles T. Palmer for the manufacture of paper or pasteboard boxes, in patent No. 132,368, dated October 22nd 1872, and to make and sell such boxes, of which patent said C. S. Patterson is now the sole owner." The said agreement provided further as follows:—"The party of the first part hereby also grants full and irrevocable power and authority to the party of the second part under them and in their name to license any other parties to use the said devices, and to make and sell such boxes when not fastening the same with wire-staples; to charge and collect from such persons such royalties as may be agreed upon, for the use and benefit of the party of the second part. The party of the first part further grants to the party of the second part authority in his name to prosecute any and all parties infringing the said Palmer patent, and to recover from any such all damages or penalties as may by courts of

justice or otherwise be awarded, to the sole use and benefit of the said party of the second part ; the said party of the second part bearing all costs of any such litigation. In further consideration of this license and powers granted, the said party of the second part will, on the proper execution of this agreement, hand over to the party of the first part one hundred shares of The Novelty Paper Box Company's stock; and the said party of the second part further agrees to, and will pay to the said party of the first part, commencing with the month of July, 1877, a royalty of fifty cents for each one thousand paper boxes sold and delivered by them during each month, payable at the expiration of one month thereafter, until expiration of said Palmer's patent: Provided, however, That should in course of litigation, an injunction by the United States courts be refused against any party or parties infringing the said Palmer patent, thereby declaring the same untenable or invalid, then from such period all royalties accuring and payable to the said party of the first part shall cease. This agreement to terminate in the event of the party of the second part failing to comply with the above conditions; and in that case the said license and powers conferred hereby to revert again to the party of the first part."

The bill averred that the defendant complied with the agreement and paid the royalties up to December 1st 1878, since which time they had ceased to pay royalty, although continuing to manufacture under the patent. The bill prayed a decree as above stated.

The defendants filed an answer and a cross-bill, in which they averred that the alleged patent was invalid for want of novelty, that other parties were making similar boxes, and both the complainant and the defendants were powerless to prevent them ; that the defendants were induced by misrepresentations of complainant as to the validity of the patent to execute the agreement, which they did "under a mistake ; " and that the consideration having failed they were released from further compliance therewith, and had terminated the same on December 1st 1878, by ceasing to pay royalties. The defendants prayed that the said agreement be cancelled, and that complainant be decreed to repay to defendants, the moneys and stock they had paid under the terms thereof.

The Master to whom the cause was referred, reported that the defendants had entered into said agreement in order to relieve themselves of the consequences of an alleged infringement of said patent, and also to control the trade by restraining others from manufacturing a similar article ; that the defendants had, as shown by the evidence and letters produced, as well as by the agreement, taken the chances of the validity of the patent ; that

the defendants had commenced a suit in the Circuit Court of the United States for the district of New Jersey to enforce their rights under said patent, but had subsequently abandoned the same, being advised by counsel that they could not obtain a decree in their favor; and that no decree had been made in the cause. The Master held that as the agreement provided that royalties should cease only in the event of a decree of the United States court adverse to the patent, the opinion of counsel could not be substituted therefor, and such opinion afforded no defence; he therefore reported in favor of the plaintiff, and, upon the statement of an account, recommended a decree that the defendants pay the plaintiff the sum of $4,107.79, being the amount of royalties due, with interest and costs.

The defendants filed exceptions to the Master's report, and after argument the court entered this decree : " And now, May 31st 1881, it is ordered and adjudged that the finding of the Master be reversed, and it is decreed that complainant's bill in this cause be dismissed with costs; and it is also decreed that the cross bill be dismissed without costs."

From this decree the complainant took this appeal.

*Hector T. Fenton,* for the appellant.

*J. Edward Carpenter* and *M. B. Philipp,* for the appellees.

Mr. Justice STERRETT delivered the opinion of the court, March 6th 1882.

The rights and liabilities of the parties to this contention must be measured and determined by their agreement of November 1877; considered in connection with what subsequently occurred in relation to the subject matter thereof.

By the terms of that agreement the appellant, as assignee of certain letters patent issued by the United States to Charles T. Palmer in October 1872, granted to the Novelty Paper Box Company, the appellee, the sole and exclusive right and license to make, use and sell all the devices for the manufacture of paper or pasteboard boxes, covered by said patent, and to make and sell such boxes. He also granted to said company full and irrevocable power and authority to license any other parties to use the said devices and to make and sell such boxes, with the right to charge and receive, to its own use, such royalties as the sub-licensees might agree to pay; and also, in his name, but at its expense, to prosecute all parties infringing said patent, and recover, for its sole use and benefit, all damages or penalties that might be awarded against them by courts of justice or otherwise. In consideration of the license and powers thus

granted, the appellee agreed to give appellant one hundred shares of its capital stock and pay him a royalty of fifty cents per thousand for all the paper boxes sold and delivered by it during each month, until the expiration of the patent: "provided however, that should, in the course of litigation, an injunction by the United States courts be refused against any party or parties infringing the said Palmer patent, thereby declaring the same untenable or invalid, then and from such period all royalties accruing and payable to the said party of the first part shall cease."

The agreement also contains a stipulation that it shall terminate in the event of the company failing to comply with the conditions thereof; and, in that case, the license and powers granted shall revert to appellant. This provision was evidently intended for the benefit of appellant, and not for the purpose of enabling the appellee at his own option to terminate the contract by simply refusing to comply with its terms.

It is very evident from the provisions of the agreement, that the parties thereto did not regard the validity of the patent as entirely free from doubt: and that, in consequence of its doubtful validity, or for other reasons, the devices claimed by the patentee were being used by others without license. From testimony which fully warranted his conclusions, the learned Master found, substantially, that for some time prior to the date of the contract the company appellee was engaged in making paper boxes on the principle covered by the Palmer patent; that, with the view of avoiding the possible consequences of an injunction for infringement, and at the same time of placing itself in a better position to control the trade, by restraining others from making boxes of like form and character as those made under the Palmer patent, the company commenced negotiations with appellant which resulted in the contract hereinbefore referred to, and that in so doing the company assumed all the risk of the validity of the patent.

This fully accords with the letter as well as the spirit of the agreement. The company acquired the license, and undertook to prosecute infringers, at its own expense and for its own benefit, and in consideration of the advantages thus secured to itself, it agreed to pay appellant the stipulated royalty until the expiration of the patent, with the proviso that if, in the course of the contemplated proceedings against those who were using the patent without license, the proper court refused an injunction on grounds involving the invalidity of the patent, then and in that event the payment of royalty should cease.

The only construction of which the contract is fairly susceptible is that the stipulated royalty was to be paid monthly until the expiration of the patent, unless its validity was sooner

[Biddle's Appeal.]

impeached by a refusal of the proper court to restrain those who were supposed to be infringing it. Having enjoyed the advantages thus contracted for, the appellee is bound to pay the consideration therefor. The authorities cited and relied on by the learned counsel for the appellee are not applicable to the facts of this case. Upon the facts found by the learned Master the decree recommended by him should have been adopted.

Decree reversed, and it is now adjudged and decreed that the appellee pay to appellant the sum of four thousand one hundred and seven dollars and seventy-nine cents, with interest from May 1st 1880: that the cross-bill be dismissed, and that the appellee pay the costs, in-including the costs of this appeal.