## HEADLEY GOOD ROADS CO. v. BARBER ASPHALT PAVING CO.

(Circuit Court of Appeals, Third Circuit.  August 7, 1923.)

### No. 2957.

1. **Patents ⬥129—Licensee held bound to pay stipulated royalties whether patent valid or invalid.**

   So long as licensee enjoyed benefit of license agreement and manufactured and sold under presumably valid patent, it must pay stipulated royalties which became due before patentee applied for reissue, whether patent was valid or invalid.

2. **Estoppel ⬥63—No inconsistency between statement in application for reissue that patent invalid and claim in action against licensee that omitted element should be read into patent.**

   There is no inconsistency between patentee's allegation in application for reissue that patent was invalid because of omission from claim of element constituting the novelty of the invention, and assertion in suit against licensee that such omitted element should be read into the claim of the patent, as, in such suit, only scope and not validity is in issue.

In Error to the District Court of the United States for the District of Delaware; Hugh M. Morris, Judge.

Suit by the Barber Asphalt Paving Company against the Headley Good Roads Company.  Judgment for plaintiff (284 Fed. 177), and defendant brings error.  Affirmed.

See, also, 283 Fed. 236.

Augustus B. Stoughton, of Philadelphia, Pa., Charles F. Curley, of Wilmington, Del., and E. Waring Wilson, of Philadelphia, Pa., for plaintiff in error.

Fraley & Paul, of Philadelphia, Pa., and William G. Mahaffy, of Wilmington, Del. (Henry N. Paul, of Philadelphia, Pa., of counsel), for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and GIBSON, District Judge.

DAVIS, Circuit Judge.  The parties will be referred to as they appeared in the District Court.  The plaintiff instituted these proceedings to recover royalties alleged to be due it in accordance with a license agreement under letters patent No. 956,009, for a method of making roads by the use of a specified bituminous emulsion.  The agreement covered another patent, but it was never used and has nothing to do with the decision in this case.  The defendant operated under the license and paid the stipulated royalties for all the emulsion sold except that sold to railroads which was used in building railroad crossings and platforms.  Under the license agreement, the defendant covenanted to pay the royalties, keep an account of the emulsion manufactured by it, and "to proceed with diligence with the exploitation, manufacture, use and sale of bituminous emulsion manufactured under the agreement for road and street construction and in all reasonable and proper ways and to the best of the defendant's ability to promote the use and sale of such bituminous emulsion."  The defendant withheld payment for the emulsion sold to railroads on the ground

that neither a railroad crossing nor platform is a road or street within the meaning of the agreement and patent and that the emulsion manufactured and sold by it was not covered by the patent. The case was tried without a jury to the judge who disposed of the question adversely to the defendant and entered a verdict on July 13, 1922. On July 4, 1922, nine days before the verdict was entered, a reissue of the patent was granted, and two days after the entry of the verdict the defendant filed a motion for a new trial on the ground of newly discovered evidence. The newly discovered evidence is the file wrapper and the reissue letters patent, No. 15,401. In order to have the full case before this court on review, the learned trial judge granted a new trial at which the only evidence admitted was the evidence of the former trial which was admitted by stipulation. The file wrapper and reissue letters patent were offered, but were not admitted on the ground that the file wrapper, the surrender of letters patent No. 956,009, and the reissue letters patent No. 15,401, were "wholly irrelevant and immaterial to the issues of this case." The grounds on which the first trial was based were abandoned by defendant on the retrial and before us.

The defendant contends that the surrender of the old patent and its reissue released the licensee from its obligation to pay royalties stipulated in the license agreement, and also that the emulsion was not within the patent, and the public, including defendant, was free to manufacture, sell, and use it. These are the sole questions before us. If the licensee is released by the reissue of letters patent from paying past royalties due under the agreement before the reissue, the file wrapper and contents of the reissue letters patent became material, and they should have been admitted in evidence.

[1] It must be kept in mind, however, that this suit is based on the license agreement and not on the validity of the patent. The defendant does not contend that in the price it charged and received for the emulsion, the stipulated royalties, now in issue, were not computed and collected from the railroads. No contention is made that defendant did not receive during the period in question all the advantage from the license agreement that it would have received, had there never been a reissue. So long as the defendant enjoyed the benefit of the license agreement, manufactured and sold under the presumably valid patent, it must pay the stipulated royalties in question, all of which became due before the application for a reissue was filed, whether the patent was valid or invalid. Robinson on Patents, vol. 3, 697; Angier v. Eaton, Cole & Burnham Co., 98 Pa. 594, 600; Patterson's Appeal, 99 Pa. 521; Covell v. Bostwick (C. C.) 39 Fed. 421; Holmes, Booth & Haydens v. M'Gill, 108 Fed. 238, 47 C. C. A. 681; Kinsman v. Parkhurst, 59 U. S. (18 How.) 289, 293, 15 L. Ed. 385.

"No warranty of validity of letters patent is implied in any license given thereunder. * * * As long as a licensee continues to enjoy the benefit of the exclusive right, he must pay the royalty which he promised to pay and he cannot escape from so doing by offering to prove the patent to be void." Walker on Patents, § 307.

[2] Defendant contends that the emulsion was now within the patent which, the file wrapper and reissue letters patent show, was

invalid. What it relies on in them are the statements of the patentee that the patent was inoperative and invalid and that such invalidity was due to the failure to set out specifically in the claim the contents of lines 83–85 of the description. The learned trial judge well disposed of this contention as follows:

"Lines 83–85 of the original patent are:

" ' * * * What 1 claim as new is that I use as the base of my asphaltic cement hard bitumen which is not fluid when cold, in excess over fluxes and chemicals.'

"The single claim of that patent reads thus:

" 'Having thus described my invention, what I claim is:

" 'The method of building roads, which consists in mixing an asphaltic cement emulsified with an agent whose basis is water, with broken stones, gravel, earth, etc., in their natural condition, and spreading and compacting the mixture on a suitable foundation, substantially as described.'

"With respect thereto the oath filed with the application states:

" 'And deponent further says that the errors which render such patent so invalid arose from inadvertence and mistake. * * *

" 'That the following is a true specification of the errors which it is claimed constitute such inadvertence or mistake relied upon. * * *

" '3. The specification states that the novelty of the invention is found in the use as the base of the asphaltic emulsion of a hard bitumen in excess over fluxes and chemicals (meaning the soap as above explained), but although this was stated to be the novel point of applicant's invention, it was not specifically mentioned in the claim, and there should have been a claim covering the use in the patentee's method of building roads of such emulsified asphaltic cement in which the bitumen is in excess over fluxes and chemicals.'

"At the trial plaintiff contended that lines 83–85 should for the purposes of this suit be read into the claim proper. Defendant insists that the position taken by the plaintiff at the trial was inconsistent with the position taken by it in the Patent Office because plaintiff's assertion in the Patent Office of the invalidity of the patent by reason of the failure to incorporate the provisions of lines 83–85 of the specification into the claim proper is, as defendant asserts, irreconcilable with the plaintiff's contention at the trial that a proper construction of the patent required lines 83–85 to be read into the single claim, in that the necessary consequence of such construction is a denial of the invalidity asserted by the plaintiff in the Patent Office; and that had plaintiff's assertions in the Patent Office been known at the time of the trial, it would not here have been heard to deny the invalidity theretofore asserted by it. I think, however, that instead of being inconsistent the position taken by the plaintiff in this suit is identical with that taken by it in the Patent Office, the difference in the character of the two proceedings being considered. Here, even if the patent was in law and fact invalid from the time of its grant, yet so far as this suit between licensor and licensee is concerned it must be considered as valid. Hence the only question here to be considered with respect to the patent pertained to its scope. In the Patent Office proceedings one question at least was the scope of the claim to which the patentee's invention entitled him. With respect to this the plaintiff's contention was there the same as in the suit at bar. Consequently I think that plaintiff's representations in the Patent Office are not material to this suit."

We agree with his conclusions, and the judgment is affirmed.