## WARNER BROS. CO. v. AMERICAN LADY CORSET CO.

District Court, S. D. New York.

Sept. 25, 1942.

418

Charles H. Walker, of New York City, (Fish, Richardson & Neave, of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City (Samuel E. Darby, of New York City, Arthur C. Beaumont, of Detroit, Mich., and Walter A. Darby, of New York City, of counsel), for defendant.

CONGER, District Judge.

Suit for infringement of patent and for collection of royalties claimed to be due by the reason of a license agreement between the parties.

Plaintiff is a leading manufacturer of corsets and defendant is a rival corset manufacturer.

The facts generally out of which this controversy arose are as follows: One John Field, on or about March 11, 1933, applied for a patent for a corset and/or girdle as a division of a pending application. The patent was granted on March 26, 1935, and has been assigned to the plaintiff, who is now the legal owner and holder thereof. The patent is known as Field Patent, No. 1,995,801. There are eleven claims in the patent, all of which are in suit except claims eight and eleven.

On or about October 1, 1937, by written agreement with plaintiff, defendant became a licensee under said patent, in and by which agreement in consideration of certain royalties defendant was given a non-exclusive license to manufacture and sell corsets and girdles within the scope and grant of the aforesaid letters patent. The license also covered another patent of plaintiff but that is not in issue here. Thereafter and down until on or about October or November of 1939, defendant did manufacture and sell corsets of the style and scope contemplated by said license agreement and pursuant to said agreement.

On or about November 28, 1939, by letter in accordance with the terms of said agreement, plaintiff cancelled said license agreement, because of defendant's failure to report the number and selling price of all garments made by it under said license agreement and because of failure to pay royalties. The dispute between plaintiff and defendant arose over a new material which defendant began to use in its corsets. Up until some time in the year 1939 defendant manufactured and sold under the license certain corsets using a fabric known as "power net" and defendant claims to have paid all the royalties due to plaintiff while they were using this material. Sometime in 1939 it began to use a material known as "leno". Defendant then contended and still contends that corsets made with this material are not within the scope of the plaintiff's patent and that therefore they were not required to and did not pay royalties on those garments. Thereupon plaintiff, pursuant to the terms thereof,

cancelled the license agreement. Defendant continued, after said cancellation, to make and manufacture corsets using this leno material and therefore plaintiff has brought this action for infringement of its patent.

Plaintiff in this action seeks to recover: (1) Royalties due but unpaid on all garments of the patented type sold by defendant prior to the cancellation of its license (specifically the leno garments), and (2) for defendant's infringement of the patent by the continuation of the manufacture and sale of both types of garment, leno and power net, after the termination of the agreement.

I shall take up first the question of the claim for royalties alleged to be due before the cancellation of the contract. This has to do with the use of the leno fabric.

Plaintiff's patent may generally be described by the following quotation from the patent itself: "This invention relates to corsets, girdles and the like, and its principal object resides in the provision of an improved garment of this character including portions capable of stretching both up and down and across the wearer and other portions capable of stretching up and down but not across, for purposes hereinafter indicated."

Generally it may be described as a "one way-two way" stretch corset.

The patent contemplates a panel corset composed of materials, one type which will stretch vertically only and the other both ways. The two way stretch panels are described in the patent as follows: "Referring to the drawing, there is illustrated a garment including a plurality of panels 1 of material capable of stretching not only across the body of the wearer but also up and down. This material is preferably composed of elastic yarn in combination with non-elastic yarn or stop threads adapted to limit the stretch in at least one direction, advantageously across the body, or this material may be made substantially entirely of elastic yarn, that is, without such stop threads. The material may advantageously be of woven character, that is to say, of material having both elastic warp and elastic weft strands, or being flat knit, though for some purposes the material may be of knitted character. Each of these panels preferably extends from top to bottom of the garment, and the up and down extent of the garment is advantageously such that the lower edge 2 thereof lies below the hips and adjacent posterior portions of the wearer."

The patent provides for a garment which has side panels, over the hips, with a two way stretch.

The question is whether leno is a two way stretch material as described above. It must be borne in mind that leno is an old material. There are various types of leno. I am only passing on that type which is found in the garments of the defendant which were offered in evidence, exhibits 11C–11F and 11C, and certain pieces of the material offered in evidence as the type defendant was using.

Defendant contends that this material which it used, leno, on the side panels of its garments was a one way stretch material.

Defendant conceded on the trial that the "power net" which it used on the side panels of its garments was a two way stretch material. I can see no difference between the leno and the power net in this respect. I have tested both materials manually. I find that they both have a true two way stretch; horizontally to the same extent; vertically, a little more stretch to the power material but not much.

I am confirmed in this by the evidence of the tests made by plaintiff as shown by exhibits 21A, B, C and D and 31A, B, C and D. These tests show about the same vertical stretch in each material. I am also confirmed by the testimony of an expert witness, a physicist, who made scientific tests of the two materials, power net and leno. He testified in substance that each of these was a two way stretch material and that one was the equivalent of the other.

I am satisfied that the garments made by defendant, which were offered in evidence as exhibits 11A, B, C, D, E, F and G are covered by plaintiff's patent and that a royalty should have been paid by defendant to plaintiff upon each garment sold up to the date of the cancellation of the license agreement. This includes garments with side panels of either power net or leno. I have come to this conclusion in spite of the fact that the elastic threads in leno and power run in one direction and that neither has elastic threads running both vertically and horizontally. Tests show that each of these fabrics is stretchable transverse to the elastic warp threads because of the nature of the weave of the

fabric and in spite of the fact that in both materials the vertical threads are themselves inelastic. Tests made by plaintiff clearly show that corsets similar to defendant's made with side panels of leno have a decided stretch and functionally perform the same as corsets made with side panels of material made of elastic threads running in both directions.

■ Defendant urges that in the event that I find the Field patent invalid, plaintiff should not recover the royalties unpaid on the sale of defendant's leno garments to the date of the cancellation of defendant's license. I cannot hold with defendant in this contention. The law is clear. So long as the defendant enjoyed the benefit of the license agreement, manufactured and sold under the presumably valid patent, it must pay for the stipulated royalties until "evicted", which in this case would be up until the license was cancelled by the plaintiff. Drackett Chemical Co. v. Chamberlain Co., 6 Cir., 63 F.2d 853; Headley Good Roads Co. v. Barber Asphalt Paving Co., 3 Cir., 292 F. 119.

■ We now come to the question of defendant's infringement of plaintiff's patent. I have indicated above and I now hold that defendant's garments (in evidence), having side panels of either power net or leno, embody the Field invention and come within the claim of the said patent and therefore are infringements of the said patent.

The next question which presents itself is the validity of the Field Patent No. 1,995,801.

I shall first take up the question of the invalidity of the Field patent because of the prior knowledge, use and sale by Roth Creations, Inc.

Mr. Roth, president of the Roth Creations, Inc., testified that this company had been in the business of manufacturing and selling corsets since February, 1932; that he himself had been in the corset business for nearly forty years; that he designed all the corsets for Roth Creations, Inc.; that sometime in March of 1932 he designed two corsets which were identified by style numbers as 3012 and 3013; that these garments were identical except that one was two inches longer than the other; that the corset was made of a knitted two way stretch material with one panel in front and one in back; that on the face of the front panel was sewn an elastic material having only a vertical stretch; that a sample garment was made up and given to an employee of the company to figure and estimate the cost of manufacture; that this was done and the corset given an estimate number; various other steps were had so that the garment was put into the company's line for sale shortly before April 1, 1932. That on April 1, 1932, a sale of one such corset was made to a firm in Glasgow, Scotland. On May 6, 1932, one-half dozen were sold to the same concern; that the record of the order for the same is dated April 30, 1932; that other sales of these corsets (style 3012 and 3013) were made to Lord & Taylor on May 2, 1932, on an order dated April 13, 1932. The above is a brief resume of the testimony of Mr. Roth. I have accepted it as correct and true. I have not relied on his testimony alone. He was corroborated in all essential details by one Dugan who assisted in designing the corset. He, Dugan, also testified from documentary records that he cut the first sample garments which were made up from the design of Mr. Roth (March, 1932). He produced the original master patterns, dated March 26, 1932, that he personally made for style 3013.

He was further corroborated by one Meister; no longer in the employ of Roth and out of the corset business for many years. He testified that it was his business to figure and estimate the cost of manufacture of these corsets; that he did so. The original cost sheets of each style (3012 and 3013) were produced and marked in evidence. One is dated March 22, 1932 (3012), the other April 4, 1932 (3013).

Three other employee witnesses added corroboration to minor details.

In addition there was a great deal of documentary corroborating evidence. I will not discuss this in detail. But practically every step from the designing to the final output was evidenced by documents made at the time which clearly prove to me that these corsets bearing style numbers 3012 and 3013 were designed by Roth and manufactured by Roth prior to May 1, 1932, the date when Field claims he conceived the idea of his claimed invention.

There was some discrepancy in the testimony as to just what material was used in the front panel of the Roth corset in the beginning. I am satisfied that Mr. Roth was mistaken in his testimony. This error was corrected by another witness and by

documentary evidence. At any rate whether it was figured batiste that was used or whether it was plain, I am satisfied that it was a one way stretch material. I do not regard this error in his testimony as vital or in any way affecting his credibility.

The Roth garments, 3012 and 3013, with the panels of two way stretch material in front as shown by the original corset in evidence, clearly anticipate the claims of the Field patent in dispute. At least they anticipate claims one, four and five.

Plaintiff admits that, if it is established that the single garment sold by Roth prior to May 1, 1932, was the same as exhibit 1, claims one, four and five would be anticipated. Plaintiff urges, however, that the sale would have no effect on claims two, three, six, seven, nine and ten.

These latter claims differ from the other in that they indicate a panel of one way stretch material in the back. I am rather inclined to disagree with plaintiff in this contention. I have found claims one, four and five to be invalid because of anticipation. I feel that the other claims in issue are thereby affected and invalid. I can see no patentable invention in the one set of claims over the other because the addition or option of a panel of one way stretch material in the back. I am inclined to believe that the different claims are the equivalent of each other. The following language of the patent would seem to indicate that: "It will be understood that the front may be constructed as described while the rear is entirely of material such as employed in panels 1 or vice versa, without sacrificing the advantages at the other points in the garment."

I do not base my finding wholly or in the main upon this point. I have come to the conclusion that the Field patent in issue is invalid because of want of invention.

I am satisfied that the patent in issue has not been completely anticipated by the prior art offered in evidence (assuming that the Roth garment does not anticipate all of the claims). The question is therefore purely one of invention and consideration of what has gone before is highly important.

In coming to my conclusion herein I have used as a yardstick the rule laid down by the Supreme Court of the United States in the case of Cuno Engineering Corp. v. Automatic Devices Corp., 314 U. S. 84, 62 S.Ct. 37, 40, 86 L.Ed. 58. I quote the pertinent parts thereof: "* * * if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. * * * Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable. * * * That is to say, the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain. * * * Strict application of that test is necessary lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art."

Having in mind the prior art and measuring the Field patent by the above rule, I cannot give Field the credit of an invention, but must only conclude that what he did was the work of a skilled artisan.

It must be borne in mind that what Field claims by his invention is extremely limited. The garment contemplated by the patent in suit is one which he claims will not ride up on the wearer's body and will at the same time restrict and confine the wearer's abdomen and buttocks. He had solved this first problem (riding up) by his patent No. 1,919,292 granted July 25, 1933. So that all that he actually can claim by way of improvement over his own prior patent is that this new garment would restrict and confine the abdomen and buttocks.

Field was working in a crowded art. He was using old materials. Panel corsets were not new. The use of two way stretch materials was not new. The use of one way stretch material was not new. The use of non-elastic or non-stretchable material for panels was not new. The functions which he claimed for his new garment were not new. Field was a man skilled in the art and he was presumed to know the prior art and the prior public uses disclosed in the art. With the advent and discovery of a new stretchable material corset makers began to devise new types and styles of corsets. There were before Field's claims to have invented his new corset already in the field panel corsets with this new stretchable material. Various combinations of paneled material were

used; panels of one way stretch material with a panel of not stretchable fabric in front to give control over the abdomen; combination of a panel or panels of two way stretchable material with a panel of non-stretchable fabric in front; another combination of a back panel of two way stretchable lastex material and a one way stretch front panel (defendant's exhibit II). Then of course there was the Roth garment, a panel corset of two' way stretch material with a front panel of one way stretch material. In addition there was his own prior patent No. 1,919,292, which provided for two panels of two way stretch material. The specifications of that patent, however, provided that the number of panels might be varied and that "the confining action of the garment is especially effective, whether the front panel be made of the same material as the rear panel, or from material which stretches in but one direction, or from non-elastic material".

■ With these various garments in the prior art, Field, it seems to me, did a simple thing, I use the term simple in the sense of being obvious; he shifted panels of material, old in the art, around. To accomplish this was but the exercise of that mechanical skill to be expected of any skilled corset designer with the prior art before him. It was an obvious step to rearrange panels to accomplish the result he desired. It may not be called a flash of creative genius but the result of the skill of the calling. The most that one can say, is that Field added something to the prior art which made it a bit more useful perhaps, but that is not invention. Cuno Engineering Corp. v. Automatic Devices Corp., supra.

■ In coming to this conclusion I have not been unmindful of the commercial success of plaintiff's patented product, but commercial success is not conclusive and may not replace a positive conviction of lack of invention. Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp. et al., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005.

■ I have also had in mind a previous adjudication of the validity of the patent in suit. The decision in that case is very persuasive but the court in that case did ·not have the advantage of having before it the Roth garment, neither did it have before it the decision in the Cuno Engineering Corp. case, supra.

Plaintiff is to have an accounting for royalties due on the manufacture and sale of garments covered by the patent in suit prior to the termination of the license. In all other respects judgment should be for the defendant, and the complaint dismissed.

If findings of fact and conclusions of law are submitted, they should be triple-spaced typed, and on five days notice. The opposing counsel, if he be so disposed, should submit, on two days notice, criticisms of the proposed findings, as counter findings will avail him nothing.