**VANITY FAIR MILLS, INC.,**
**Plaintiff-Appellant,**

v.

**OLGA COMPANY (INC.),**
**Defendant-Appellee.**

**No. 124, Docket 74–1559.**

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 1974.

Decided Feb. 4, 1975.

---

Willis H. Taylor, Jr., New York City (Pennie & Edmonds and Philip T. Shannon, New York City, on the brief), for plaintiff-appellant.

Stuart A. White, New York City (Anderson, Russell, Kill & Olick, P. C., and Nicholas L. Coch, New York City, on the brief), for defendant-appellee.

Before KAUFMAN, Chief Judge, and ANDERSON and OAKES, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

This case concerns patents numbered 3,142,300 ("300") and 3,142,301 ("301"), for women's panty briefs, initially issued to Mrs. Olga Erteszek on July 28, 1964 and subsequently assigned by her to appellee, Olga Company. Since 1963 Olga Company has marketed a brief embodying the patents. The appellant, Vanity Fair, Inc., (Vanity Fair) is also a manufacturer of women's undergarments and lingerie and between 1967 and 1969, marketed a brief, Style 40–28, which Olga Company alleges infringed the patents in question.

The brief, or panty brief, is one of three different types of body control undergarments in the girdle family; the other are the girdle proper, or "skirt girdle," and the so-called "panty girdle." The panty brief basically consists of an elastic member which encircles the abdomen and hips, and a crotch piece, which creates individually defined leg openings. Despite the advantages of a panty brief in terms of versatility and freedom of movement, for over 20 years it proved difficult to create a garment with sufficient elastic strength to flatten the abdomen without causing discomfort from binding in the crotch and around the legs.

In 1962 Mrs. Erteszek worked out the design of the brief, covered by the "301" patent, which basically consists of two constituent members. The first, the girdle-member, is a torso-encircling elastic body which provides stomach control. The second is a separate piece of fabric cut and sewn so as to constitute a panel which overlays the girdle member in the front and which extends down under the crotch and is attached to the lower back edge of the girdle member. Because the panel-crotch member is sewn only perpendicularly part way down the girdle member at the side edges and is not stitched horizontally to the front of the girdle member at any point, the two members can move independently of one another.[1] This independence of movement allegedly makes it possible for the leg openings to adjust naturally as the position of the wearer changes.

1. See Figure #3 in the district court opinion Vanity Fair Mills, Inc. v. Olga Company (Inc.), 369 F.Supp. 1233, 1235 (S.D.N.Y.1974).

It was apparent to Mrs. Erteszek, however, that the "301" brief had a major flaw—the front lower portion of the girdle member tended to ride up beneath the overlying panel-crotch member. Her solution was to add a piece of tricot material inside the original crotch piece to connect the front lower border of the girdle member with the crotch piece. The tricot piece was loose enough to permit the adjustment of the leg openings as in the initial design of the "301" brief, while at the same time it prevented the girdle member from riding up.

Olga Company never marketed a garment based on the "301" design, but instead marketed a garment based on the "300" patent in 1963 which met with immediate commercial success. This success had continued for over ten years at the time this action came to trial below. See, Vanity Fair Mills, Inc. v. Olga Company (Inc.), 369 F.Supp. 1233, 1237 (S.D. N.Y.1974).

Mrs. Erteszek's applications for patents on "300" and "301" were initially rejected, but, after she made some amendments to them and a further explanation of claimed functional differences between her garments and the design in the Rosenthal Patent No. 2,763,-008, the Examiner allowed the applications, and Letters Patent for each of "300" and "301" were issued July 28, 1964.

Meanwhile, Vanity Fair, in its efforts to remedy the control and leg binding problems in its panty briefs, produced and marketed the alleged infringing garment, Vanity Fair Model 40–28, in which, as the district court noted, "the unique, patented features of the Olga garment appeared virtually without change . . .." 369 F.Supp. at 1238. From the time of its introduction into the market in the fall of 1967 until its discontinuance sometime in 1969, it was Vanity Fair's largest selling brief.

On October 27, 1967, Vanity Fair filed a complaint in the district court seeking a declaratory judgment that Olga Company's "301" and "300" patents were each invalid and not infringed by Vanity Fair. By counterclaim Olga Company sought a determination that said patents were valid and that Vanity Fair had infringed each of them. Since Vanity Fair's only creditable defense to Olga Company's counterclaim for infringement was the invalidity contention, however, the central issue below was whether or not Olga Company's patents were invalid because "obvious" within the meaning of 35 U.S.C. § 103.[2]

The district court, characterizing the Olga Company's panty briefs as involving "a novel type of garment construction, which was far from obvious, as demonstrated by the history of unsuccessful efforts by other designers to solve certain basic structural problems" (369 F.Supp. at 1239), held the "301" and "300" patents each valid and infringed. This appeal followed.

■ To be patentable a product must be (1) useful, (2) novel, and (3) non-obvious. See, 35 U.S.C. §§ 101–103. The only issue on appeal is whether the Olga Company's patents are invalid for alleged obviousness over the prior art under § 103, a question of law. See, e. g., Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Julie Research Laboratories, Inc. v. Guideline Instruments, Inc., 501 F.2d 1131, 1136 (2 Cir. 1974). This court holds that they are.

■ While peripheral references were made below and on appeal to other patents alleged to be obvious prior art for the Olga Company patents,[3] Vanity Fair's chief reliance was and is on the Maidenform garter-belt and panty-brief covered by Rosenthal Patent No. 2,763,-008. A comparison of this garment with

---

**2.** 35 U.S.C. § 103 provides, in relevant part: "A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

**3.** See Vanity Fair Mills, Inc. v. Olga Company (Inc.), 369 F.Supp. 1233, 1239, note 1 (S.D.N.Y.1974).

Olga Company's "301" brief reveals that in the latter, the panel, which in the Rosenthal design ran *inside* the torso-encircling member and down under the crotch, was shifted to the *outside* of the torso-encircling elastic body and attached to the waistband and part way down the girdle member in the front at the outer edges of the crotch piece and at the edge of the girdle member in the back. The length of the material providing vertical stretch was thus increased, and the panels were able to function independently of one another, lessening the tendency for such briefs to bind in the crotch and in the legs. This method of achieving vertical stretch maximization and independence of panel movement falls well within the capabilities of any person having ordinary skill in the art who gives serious thought to the root cause of the binding problems. See, *e. g.*, Cuno Corp. v. Automatic Devices, 314 U.S. 84, 90, 62 S.Ct. 37, 86 L.Ed. 58 (1941); Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536, 538 (2 Cir. 1966); Warner Bros. v. American Lady Corset, 48 F.Supp. 417, 421–422 (S.D.N.Y.1942), aff'd 136 F.2d 93 (2 Cir. 1943). Olga Company's "300" patent merely solved the tendency of the bottom edge of the torso-encircling member in the "301" brief to ride up in the front by attaching a piece of tricot to hold it down. The net result of these changes was an increase in stomach control through the use of a stronger elastic material without the corresponding decrease in comfort that had attended increased control in the past. Neither change made by Mrs. Erteszek, however, either singly or in combination, qualifies as the product of "inventive genius." Cuno Corp. v. Automatic Devices Corp., *supra,* 314 U.S. at 91, 62 S.Ct. 37.

The troubling aspect of the case is that for well over twenty years no one prior to Mrs. Erteszek had been able to overcome the leg and crotch comfort problems which seemed endemic to this type of garment, thus casting some doubt on the obviousness of the solution. Secondary considerations such as commercial success, long felt but unsolved needs, and the failure of others may be utilized "to give light to . . . the subject matter['s] . . . obviousness or nonobviousness (Graham v. John Deere Co., *supra,* 383 U.S. at 17–18, 86 S.Ct. at 694), and an invention which appears obvious when viewed after the event may be found to be patentable when consideration is given to the problems in a particular industry or trade which the invention solved. See, *e. g.,* Shaw v. E. B. & A. C. Whiting Co., 417 F.2d 1097 (2 Cir. 1969), cert. den. 397 U.S. 1076, 90 S.Ct. 1518, 25 L.Ed.2d 811 (1970); Application of Rothermel, 276 F.2d 393, 47 CCPA 866 (1960). Mrs. Erteszek's solution of problems described by the district court as "basic", distinguishes the instant controversy from such girdle cases as Warner Bros. v. American Lady Corset, *supra,* and Gossard v. J. C. Penney Co., 304 F.2d 515 (7 Cir. 1962). Likewise, the fact that these problems were structural or inherent in the type of garment in question, and the object of considerable creative effort, precludes facile reliance on Formal Fashions v. Braiman Bows, Inc., 369 F.2d 536 (2 Cir. 1966). It was these distinguishing features which led the court below to uphold the patents on the strength of United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966), and Shaw v. E. B. & A. C. Whiting Co., *supra.*

The district court's reliance on *Adams* and *Shaw* is misplaced, however. In *Adams* the Supreme Court stated that "known disadvantages in old devices which would naturally discourage the search for new inventions may be taken into account in determining obviousness." 383 U.S. at 52, 86 S.Ct. at 714. This principle was most recently applied in this Circuit in *Shaw.* Unlike *Adams* and *Shaw,* however, where the prior art, if taken at face value, would discourage one skilled in the art from utilizing the methods that led to the patentable in-

vention (see, 383 U.S. at 51–52, 86 S.Ct. 708; 417 F.2d at 1104), in this case the 1956 Rosenthal patent far from discouraging such a solution suggests to one skilled in the art that the correction of prior crotch and leg discomfort problems lay in independently functioning panels placed on the outside rather than on the inside of the torso-encircling member.

Furthermore, while the Erteszek patents solved problems that were "basic" in the sense that they had persisted for a long time and thus seemed to be inherent in panty briefs, in the final analysis these patents represent style and comfort improvements rather than an innovative device for stomach control. Viewed in this light, the patented briefs have much in common with those designs which are " 'new and pleasing enough to catch the trade'," but which do not reflect such exceptional talent beyond the skill of the ordinary designer as to merit a design patent. See G. B. Lewis Co. v. Gould Products, Inc., 436 F.2d 1176 (2 Cir. 1971), quoting from Neufeld-Furst & Co. v. Jay-Day Frocks, Inc., 112 F.2d 715, 716 (2 Cir. 1940).

■ This court therefore concludes that, while Mrs. Erteszek was an originator, she was not an inventor. Given the prior art and the availability of assorted stretching materials, a skilled undergarment designer could by some concentrated thinking and experimentation arrive at the same results. While such secondary considerations as commercial success and long felt but unsolved needs in the field constitute relevant evidence in a close case on the issue of obviousness, once it is established by prior art references that the difference between the patents in suit and the prior art is not substantial enough to be termed "invention", the patent cannot be sustained. See Formal Fashions, Inc. v. Braiman Bows, Inc., *supra,* 369 F.2d at 539.

The judgment of the district court is reversed.